883 A.2d 463

**Elias N. KASSOUF, Appellant,**

v.

**The TOWNSHIP OF SCOTT, Appellee.**

Supreme Court of Pennsylvania.

Argued March 3, 2004.

Decided Sept. 28, 2005.

Daniel F. Gramc, Pittsburgh, for Elias N. Kassouf.

Robert L. McTiernan, Richard B. Tucker, III, Pittsburgh, for Scott Township.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This appeal presents this Court with an opportunity to address what is required of a municipal authority pursuant to Section 508 of the Municipalities Planning Code ("Code" or "MPC"), 53 P.S. § 10101 *et seq.*, when it rejects a subdivision plan submitted by a developer. Both the Court of Common Pleas and the Commonwealth Court found that the township commissioners who rejected the subdivision plan in this instance met the requirements of the Code by providing sufficient specificity for at least some of the sixteen reasons they gave for rejection of the plan. For the reasons that follow, we affirm.

Appellant, Elias Kassouf, owns a tract of land in Scott Township, Allegheny County, on which he planned to construct a residential subdivision. In 1998, appellant began the process of obtaining township approval for the subdivision by filing an application for approval under the township's Steep Slope Ordinance.[1] Appellee township denied appellant's application, and he appealed to the Court of Common Pleas of Allegheny County. On October 16, 1998, the court reversed the township's decision and granted appellant steep slope approval. The following summer, the township attempted to withdraw the approval and require appellant to reapply under a new steep slope ordinance. In response to appellant's Petition for Clarification, the trial court found that the township could not void appellant's approval by repealing the prior ordinance and enacting a new one.

On June 13, 2000, appellant filed an application for final subdivision approval of his plan for the tract of land. The application was referred to the township commissioners who, according to township policy in existence at the time, reviewed all applications for completeness before referring them to the township planning commission. The commissioners rejected

---

1. In 1998, the township required a developer who intended to disturb a steep slope to file a separate application for steep slope approval before filing for subdivision approval.

the plan on June 27, 2000, due to a deficiency in the submission. Appellant submitted a revised subdivision plan on July 25, 2000; this time, the township commissioners referred the plan for consideration to the planning commission. In addition, the revised plan was referred to the township's engineer, Lennon, Smith, Souleret Engineering, Inc., for review. The engineer determined that the subdivision plan did not conform to the township's zoning ordinance, subdivision and land development ordinance, grading ordinance, and storm water management ordinance, listing 66 items for appellant to correct or address. The engineer's report specified the defects found, the requirements not met, and cited to the applicable ordinances.

The township planning commission met on August 16, 2000, and evaluated the township engineer's report. The commission also heard testimony from residents who complained of flooding and other problems they believed derived from a prior subdivision development in the area which was constructed by appellant. Appellant requested and was granted a sixty-day extension of time for review of his subdivision plan, thereby postponing review until the planning commission's October 18, 2000 meeting. The township commissioners would then review the planning commission's recommendation at its October 24, 2000 meeting.

Appellant submitted a second revised plan on October 9, 2000. The township engineer reviewed the plan and concluded that it still did not conform to the township's zoning, subdivision and land development, grading, and storm water management ordinances, this time listing 30 items to be addressed or corrected. This engineer's report, like the first one, detailed the defects in the plan, the requirements not met, and cited to the four ordinances implicated. Some defects in the July 25, 2000 plan remained uncorrected by appellant in the October 9, 2000 plan, and these defects were again listed as requiring action by appellant. At its October 18, 2000 meeting, the planning commission voted unanimously, with one abstention, to make an unfavorable recommendation regarding the plan to the township commissioners.

Appellant submitted yet another revised plan on October 23, 2000, on the eve of the township commissioners' October 24, 2000 meeting. The township solicitor recommended granting appellant an opportunity to complete his plan and to submit all required documents. The commissioners unanimously agreed to extend consideration of appellant's plan to their November 28, 2000 meeting, with the proviso that appellant submit final plans for approval by November 14, 2000.

Appellant submitted a final plan on November 14, 2000, which the township engineer agreed to review prior to the commissioners' November 28, 2000 meeting.[2] On November 17, 2000, the township engineer issued its review of appellant's October 23, 2000 revised plan, including detailed comments relating to the zoning, subdivision and land development, grading, and storm water management ordinances, with citations to the specific sections implicated. The engineer concluded that the latest plan still did not conform to the four ordinances. On November 22, 2000, appellant submitted a letter responding to some of the issues raised in the engineer's November 17 letter. On November 28, 2000, the township commissioners met and, after discussing appellant's various submissions, the timing of those submissions, and the engineer's report, the commissioners voted unanimously to reject appellant's subdivision plan. The commissioners issued a written decision on December 5, 2000, specifying sixteen independent reasons for denying appellant's application for subdivision approval.

Appellant appealed the commissioners' decision to the Court of Common Pleas of Allegheny County. Appellant argued in his land use appeal that the commissioners had improperly denied his application by relying on geotechnical reports; by

2. Appellant alleges in his Statement of the Case that he agreed to the November 28, 2000 consideration of his plan based upon a promise that the township engineer would review the October 23, 2000 revised plan within a week. This alleged promise is not memorialized in the minutes of the commissioners' October 24, 2000 meeting. Notably, in contrast, the commissioners' agreement to consider the plan on November 28, 2000, provided appellant submitted a final plan on or before November 14, 2000, is memorialized in those minutes.

finding that appellant was required to submit a traffic study; and by refusing to accept for review submissions he had made after the November 14, 2000 deadline set by the commissioners. Appellant also claimed that he was entitled to statutory "deemed approval" of his plan because the township commissioners' written decision did not comply with Sections 508(2) and (3) of the MPC.

On January 22, 2002, the trial court, per the Honorable Joseph M. James, affirmed the township commissioners' decision.[3] The trial court first found that appellant was correct that the commissioners lacked authority to reject his plan based upon the steep slope disturbance ordinance, unless the disturbance to be created was substantially increased from the drawing reviewed by the trial court prior to entering its October 16, 1998 steep slope order. However, appellant had refused to supply geotechnical information and reports from which the commissioners could determine if the disturbance deviated from that previously permitted, or if the plan met the requirements of the township's storm water management and zoning ordinances. The trial court found that appellant's refusal to comply with the requests for geotechnical information was, in itself, sufficient reason to justify the commissioners in rejecting appellant's plan.

The trial court also addressed appellant's argument that he was entitled to a deemed approval of his plan because the commissioners' decision failed to comply with Sections 508(2) and (3) of the MPC (as well as Sections 4.3.3 and 4.3.6 of the Scott Township Ordinance, which are identical to Sections 508(2) and (3)). These MPC sections set forth the technical requirements for a decision on a subdivision application, as well as the "deemed approval" consequence that may arise from a township's failure to comply with those technical requirements:

3. Since the trial court received no additional evidence, its review was limited to determining whether the commissioners had committed a manifest abuse of discretion or an error of law. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment,* 501 Pa. 550, 462 A.2d 637, 639 (1983).

(2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

(3) Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect.

53 P.S. § 10508. The trial court found that the commissioners' decision complied with the MPC because it incorporated by reference prior correspondence between appellant and the township engineer and, in that correspondence, the engineer "specifically reference[d] sections of the Township's Zoning Ordinance, Subdivision Ordinance, Stormwater Management Ordinance, Grading Ordinance and Construction Standards for each deficiency of the plan." Slip op. at 4. Citing *Advantage Development, Inc. v. Board of Supervisors of Jackson Township*, 743 A.2d 1008 (Pa.Cmwlth.2000), the trial court held that a township's denial letter that incorporates an engineer's report by reference satisfies the specification/citation requirements of the MPC. Alternatively, the court noted that the commissioners' decision itself set forth the specific sections of the ordinances involved for a number of the sixteen reasons which had been listed in support of the denial of appellant's application. Slip op. at 4–5.[4]

On further appeal, a Commonwealth Court panel affirmed in an unpublished opinion. The panel first examined appellant's

---

4. After holding that the reasons summarized in the text were adequate to support the commissioners' decision, the trial court declined to review appellant's two additional claims—*i.e.*, that the commissioners erred by (1) holding that appellant was required to submit a traffic study; and (2) refusing to accept for review submissions made subsequent to the November 14, 2000 deadline set by the commissioners.

claim that the commissioners had erred in failing to consider appellant's November 22, 2000 submission, which was made eight days after the deadline imposed by the commissioners for appellant's final plan submission. The panel found that the record indicated that the commissioners in fact had referred to appellant's November 22, 2000 submission, thereby evidencing their awareness of it, but merely declined to refer it to the township engineer for preparation of another formal report, which would have resulted in further delaying the review process.

With respect to appellant's claim that he was entitled to a deemed approval of his plan because the commissioners' decision allegedly did not comply with the MPC, the panel noted that, in point of fact, seven of the sixteen reasons listed by the commissioners for denying appellant's application set forth the defects in the plan, the requirements not met, and citations to the ordinance provisions implicated. Alternatively, the panel noted that the commissioners' decision incorporated by reference the township engineer's report and correspondence, which provided greater detail as to the ordinance requirements implicated and the corresponding defects in the plan, and cited to the applicable ordinances. Like the trial court, the panel cited the *Advantage Development* case and held that the commissioners' decision satisfied the requirements of the MPC.

On further appeal to this Court, appellant raises two issues: (1) whether the lower courts erred in finding that he was not entitled to a deemed approval of his subdivision plan; and (2) whether the lower courts erred by not requiring the township commissioners to review all of appellant's submissions prior to rendering their final decision. This Court's review in a land use appeal where the trial court heard no additional evidence is limited in scope to a determination of whether the local agency abused its discretion or committed an error of law. *In re Petition of Dolington Land Group*, 576 Pa. 519, 839 A.2d 1021 (2003); *In re Realen Valley Forge Greenes Associates*, 576 Pa. 115, 838 A.2d 718 (2003). Because this appeal presents issues of law, including issues of statutory

interpretation, this Court's review is plenary. *Hazleton Area School District v. Zoning Hearing Bd.*, 566 Pa. 180, 778 A.2d 1205 (2001), *citing Commonwealth v. Baker*, 547 Pa. 214, 690 A.2d 164 (1997). We conclude that there was no abuse of discretion or error of law.

Appellant first questions the lower courts' holding that the township commissioners' decision denying approval of his subdivision plan met the requirements of Section 508(2) of the MPC, and therefore, appellant was not entitled to a deemed approval of his plan. Appellant notes that, in *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989), this Court held that the requirements of Section 508(2) are mandatory. Appellant further notes that there are three essential requirements that comprise the mandate in Section 508(2), to wit: the decision disapproving the application must include (1) a specification of any defect in the application; (2) a description of the requirements in the applicable statute or ordinance which have not been met; and (3) a citation to the statutes or ordinances relied upon. Appellant acknowledges that the township commissioners' decision letter set forth sixteen independent reasons for denying his application, but he argues that each of those reasons failed to comply with at least two of the three mandatory criteria set forth in Section 508(2). One pervasive defect, in appellant's view, is that the commissioners' citations to the ordinances involved referred only to the relevant section numbers, without indicating which specific ordinance (zoning ordinance, subdivision and land development ordinance, grading ordinance, or storm water management ordinance) was at issue.

In addition to arguing that the courts below erred to the extent that they held that the four corners of the commissioners' decision letter satisfied the statute, appellant also disputes the lower courts' alternative holding that it is appropriate to go beyond those four corners and consider information in the reports and correspondence from the township engineer, addressing defects in the plan, because that correspondence was incorporated by reference consistently with the *Advantage Development* case. Appellant argues that *Advantage Develop-*

*ment* is inapposite because, in that case, the engineer's report was specifically incorporated by reference and it was actually physically attached to the township's decision. The decision in this case attached no such document, and moreover, appellant submits, the references in the decision to various comments and objections of the township engineer were not tied "to any specific letter or other communication." Thus, appellant argues, he could not know "with any certainty" which comments of the engineer were actually being "incorporated" into the decision so that he could better understand the township's objections to his subdivision plan.

Appellee township responds that, while the courts have required that decisions denying applications comply with Section 508(2), they have not required the sort of "hyper-technical specificity" that appellee believes appellant advocates. Appellee argues that the purpose of Section 508(2) is substantive: *i.e.,* it is designed to provide an applicant whose plan has been denied a sufficient understanding of the decision to enable him to determine whether to challenge it, and in turn, to provide a basis for the agency or a court to evaluate any such challenge. Brief for Appellee, 11, *citing Advantage Development,* 743 A.2d at 1012. Thus, in appellee's view, "simple statements of the defects, requirements and provisions are more than adequate." Appellee further argues that, so long as any of the 16 reasons listed in its decision satisfied the statute, the denial must be upheld. Appellee then argues that reasons (2) through (7) and (14), as set forth in the township decision letter, considered without reference to any other document, clearly set forth specific defects in the plan, the requirements not met, and the ordinance provisions at issue. With respect to appellant's complaint that the references to ordinances in these instances were to section numbers, without stating which of the ordinances was at issue, appellee responds that the decision made plain the four ordinances which were at issue overall, the content and context of the objections as described made plain which ordinance was at issue; and thus, the failure to refer to the specific ordinance applicable to each

citation did not prevent appellant or the trial court from understanding these reasons for the denial.

In the alternative, appellee argues that the commissioners' decision incorporated by reference the township engineer's report and, under the *Advantage Development* case, such incorporation by reference is proper. Appellee notes that the township engineer's report is divided into sections addressing each ordinance; the report then lists the defects, and makes reference to the applicable ordinances. Appellee argues that nothing in the statute or the case law suggests that the requirements of Section 508(2) cannot be met by incorporation by reference. Similarly, with respect to appellant's argument that a document which is being incorporated by reference must be attached to the decision, as happened in *Advantage Development,* appellee argues that there is nothing in the statute or the case law to suggest that such physical attachment is required. With respect to appellant's professed uncertainty as to which of the township engineer's submissions was being referred to and incorporated into the decision, appellee argues that what was at issue then before the commissioners was appellant's "final" submission, and therefore, the references to the engineer's opinion obviously referred to its November 17, 2000 report, because that was the report which addressed appellant's final submission.

We will begin our analysis with *Coretsky.* In that case, this Court held that the requirements of Section 508(2) of the MPC are indeed mandatory, as the statutory language clearly sets forth exactly what a decision denying an application **shall** specify. Although *Coretsky* is viable law in Pennsylvania, it does not answer the question posed today. The issue in the case *sub judice* is not whether the commissioners were required to comply with Section 508(2)—plainly, they were, and they admit as much. The question is whether the commissioners' decision as rendered in fact does comply. In this regard, we see no overarching, disqualifying difficulty with the notion of "incorporation by reference." The Commonwealth Court's decision in *Advantage Development* is indeed instructive. In that case, the Board of Supervisors of Jackson Township

issued a decision denying a developer's final subdivision plan. The four corners of the township supervisors' letter of denial did not comply with Section 508(2). The supervisors, however, specifically "incorporated by reference," and attached to their decision, the findings and recommendations of the township engineer as memorialized in an October 1, 1996 report.

The Commonwealth Court held that the supervisors' decision complied with Section 508(2) because the decision letter incorporated by reference a document that, in fifty-three separately numbered paragraphs, set forth in detail specifically how the subdivision plan failed to conform to township ordinances. The panel noted that, "[a]pplicants whose plans are denied have a right to a denial letter that comports with section 508(2) so that they can effectively appeal the denial to the trial court." *Advantage Development*, 743 A.2d at 1012. Without reasons for denial, neither the developer nor the trial court [can] know why the [b]oard denied the application and cannot determine whether the denial was proper. *Id.*, *quoting Dobrinoff v. Board of Supervisors of Franklin Township*, 136 Pa.Cmwlth. 282, 582 A.2d 1156, 1159 (1990). On the merits, the panel then found that the engineers report attached to the township denial letter "comport[ed] fully with the mandate of section 508(2)," and accordingly, the statute was satisfied. *Advantage Development*, 743 A.2d at 1013.

■ We have no doubt that the *Advantage Development* court was correct in its observation that the requirements of Section 508(2) are designed to ensure that the denial decision will be a meaningful and substantive one, which both provides a factual basis for a developer to assess whether to pursue reconsideration or a legal challenge, and generates the record necessary for any such challenge. If the reasons for a denial consist of defects which have already been adequately set forth in an engineer's report, or other documentation provided to the developer and available to the municipal authority in its decision-making process, it would be a pointless elevation of form over substance to require the authority to essentially cut-and-paste those conclusions into its own decision letter. There is nothing in Section 508 or in logic to prevent the

authority from making use of such a document through incorporation. A review of the incorporated document should readily reveal whether the decision indeed satisfied the substantive requirements of the statute.

The fact that there is no absolute impediment to incorporation by reference, however, does not mean that any and all references to supporting documentation will provide, as a substantive matter, an adequate articulation of the reasons for a denial for purposes of Section 508(2). In this regard, the supposed incorporation here is far less clear, and far less obviously adequate, than was the explicit incorporation by reference in the *Advantage Development* case. In the case *sub judice*, the township commissioners' decision letter does not refer to a specific report, identifiable by title or date or subject matter. Nor do the words "incorporate by reference" appear in the letter, and the commissioners did not attach any particular report or letter which they were supposedly incorporating by reference. Instead, the decision letter merely and variously refers to the township engineer's "comments," "requests" or "requirements," which appellant failed to satisfy, usually without any reference to the source or date of the comments.

It may well be, as appellee suggests, that the surrounding context indicates that the commissioners were referring exclusively or primarily to the township engineer's final letter dated November 17, 2000, especially given the commissioners' repeated references to that specific letter at their November 28, 2000 meeting.[5] And perhaps it is so that, even

---

5. It appears that there were five letters from the township engineer to appellant of a substantive nature, each one detailing specific deficiencies in appellant's subdivision plan. The engineer's final letter, dated November 17, 2000, is a more detailed version of its November 14, 2000 letter, expanding on the same listed deficiencies. Both letters refer to the report of the township's geotechnical engineer, which was transmitted to appellant under cover of the township's November 9, 2000 letter. Every deficiency addressed in the November 17, 2000 letter was also raised in the engineer's letters dated October 18, 2000 and August 16, 2000. The November 17, 2000 letter, in short, reflects the culmination of months of back and forth communication between appellant and appellee.

without using the language "incorporate by reference," or attaching the incorporated document, the township commissioners' decision nevertheless intended to incorporate and rely upon the engineer's November 17, 2000 letter. However, we agree with appellant that the subdivision applicant should not be left to guess at whether the township was truly relying upon an external document in lieu of its own Section 508 statement. Nor should the applicant be left to guess as to which of multiple documents is the one that would serve as the "incorporated" basis for the decision. If a municipal authority indeed intends for an external document to serve as the substantive explanation of the basis for its decision, it should make that point explicitly in the decision letter, and not ask the applicant, and the court system, to infer the point. Such a plain statement is a very simple task; and because the township commissioners did not make clear that such was their intention here, we must reject appellee's incorporation by reference argument.

 We nevertheless agree with the alternative finding of the courts below, *i.e.*, that appellant is not entitled to a deemed approval because there was an independent and adequate expression of the reasons for denying the application within the four corners of the township commissioners' written decision. In *Goodman v. Board of Commissioners of South Whitehall Township*, 49 Pa.Cmwlth. 35, 411 A.2d 838 (1980), the Commonwealth Court noted that a denial of approval for a plan can stand if supported by any one of the reasons set forth for denial. *Id.* at 840 (citing *County Builders, Inc. v. Lower Providence Township*, 5 Pa.Cmwlth. 1, 287 A.2d 849 (1972)). The parties do not dispute this proposition and we agree that, if legitimate, a single reason may support a denial. In the case *sub judice*, the commissioners' letter listed sixteen specific and independent reasons for rejecting the application, each set forth in a separate, numbered paragraph. Seven of those reasons—numbers 2, 3, 4, 5, 6, 7 and 14—contain the information required by Section 508(2), *i.e.*, citations to the township ordinances, the general requirements of the ordinances, and the deficiency in appellant's plan relative to the ordinances.

■ Reason number 2, for example, is legally sufficient under Section 508(2) in that it states the requirements of the ordinance, the deficiency in appellant's plan and includes citations to the applicable ordinance:

2. A traffic study has not been provided. The 12% center-line grade, which does conform to Ordinance requirements, nevertheless, contains 20% cross-section grades at the intersection, and are not appropriate for right turns out, or left turns in. A memo was provided by Trans Associates commenting on the 20% grades; however, no changes have been made to the drawing addressing those comments. The 20% cross-section grade at the intersection is unacceptable for a public street. {See Section 5–104.10.1 and 5–104.10.2}

This reason for disapproval clearly provides that appellant's plan for 20% cross-section grades at the intersection with public streets does not meet the ordinance requirement. Since the only topic addressed in this paragraph is grading, it is obvious that the citation is to the township's grading ordinance. Any reasonably intelligent person can understand the nature of this finding, assess its accuracy and substantive legal sufficiency, and make a determination of whether to seek reconsideration or appeal.[6]

■ As noted, appellant nevertheless complains that the ordinance citation listed in this paragraph, and in the other six paragraphs invoked by appellee, is insufficient because it contains only a section number with no identification of the specific ordinance. Because the letter cited to sections without naming the specific ordinance applicable to each objection, appellant claims that he is unable to identify which of the four township ordinances is being cited. This argument borders on the disingenuous. As is evident in the case of Reason number 2 quoted above, the very nature of the township's objection makes obvious which ordinance is at issue. Moreover, it also

6. We offer no view on whether the stated reason was in fact an accurate assessment of appellant's plan and identified a legitimate deficiency in the plan, for those questions are not before this Court. Appellant's objection is a procedural one, i.e., that he was not provided sufficient information under the statute to be able to understand the nature of the township's objection.

appears that the four township ordinances at issue have distinct section numbers and that no one section number is common to two ordinances. Indeed, appellant does not argue that there are multiple ordinances containing the same section numbers.[7] The substance of each objection fairly apprised appellant of which ordinance applied to each of the reasons cited for rejecting his subdivision plan. Moreover, given the extensive back-and-forth communication which preceded the commissioners' decision, it beggars belief to suggest that appellant was simply clueless as to what the commissioners deemed deficient in his plan, and why.

We cannot and will not read Section 508's requirements in an absurd or unreasonable way. In discharging its duty to specify defects under Section 508, a municipality is not obliged to provide the applicant with a primer or treatise on the contents of its ordinances. Rather, the measure of the adequacy of a decision depends on whether it is sufficient to permit the applicant to understand the specific nature of the deficiency identified, so as to permit the applicant to take whatever further action it deems necessary or appropriate. Although the citations employed by the township commissioners here certainly could have been more explicit, upon review, we are satisfied that they were adequate to apprise appellant of the perceived defects in his plan so as to satisfy Section 508.

We turn now to appellant's claim that the lower courts erred in not requiring the township commissioners to review his tardy submission prior to rendering a final decision on his application for subdivision approval. The gravamen of this complaint is that the commissioners refused to consider the letter appellant submitted on November 22, 2000, in response to the township engineer's review of appellant's November 14, 2000 "final" plan. Appellant argues that a municipality must provide a land use applicant a reasonable opportunity to respond to objections and/or to modify plans. Appellee responds by agreeing that a municipality has "an

---

7. We note that the record appellant has provided on this appeal does not contain a complete copy of the relevant ordinances.

obligation to act in good faith in reviewing and processing development plans," and that that obligation includes providing an applicant a "reasonable opportunity to respond to objections or to modify the plans." But, appellee submits, a developer "has a reciprocal good faith duty to submit plans in a reasonable and timely manner;" a developer's opportunity to respond and revise cannot be infinite; and a municipality should not be obliged to accept and consider all additional materials. Appellee argues that the commissioners in this case acted in good faith, affording appellant ample and repeated opportunities to respond to objections and to revise his plans. Brief for Appellee, 16–17.

Preliminarily, we note that it is not entirely clear that the commissioners simply refused to consider appellant's belated letter. For example, the commissioners' decision letter makes two separate references to appellant's letter, albeit the commissioners erroneously listed the letter as having been dated November 27, 2000. In any event, to the extent that the commissioners failed to fully consider the letter prior to voting and reducing their decision to writing, and failed to submit the letter to the township engineer for further review, we find no basis to upset the commissioners' decision in the circumstances *sub judice*. Appellant argues that the Commonwealth Court's holding in *Raum v. Board of Supervisors of Tredyffrin Township*, 29 Pa.Cmwlth. 9, 370 A.2d 777 (1977), mandates a contrary result because the court there held that a municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. For purposes of decision, we will assume, as the parties have, that a municipality owes a duty of good faith in these circumstances, akin to the rule set forth in *Raum*. Appellant, however, misapprehends the limited scope of the *Raum* decision, as the Commonwealth Court made clear in its later decision in *Herr v. Lancaster County Planning Commission*, 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993).

In *Raum*, after protracted litigation, a developer submitted his subdivision plan to Tredyffrin Township. The township took no action for seventy-eight days, waiting until two days

before it was slated to act upon the application to inform the developer that the township planning commission had voted against recommending approval due to two technical errors in the plan. The developer made modifications to its plan in the two days between notification of the planning commission decision not to recommend approval and the date the township's governing body was to make its decision, but the governing body refused to consider the modifications and rejected the plan on the basis of the two technical errors. The Commonwealth Court held that the township had acted in bad faith by waiting until the last possible moment to raise objections to the developer's plan and then refusing to consider his modifications, particularly where the defects in the plan were merely technical and did not involve a failure to comply with ordinances. *Raum*, 370 A.2d at 798.

In *Herr*, the Commonwealth Court discussed the *Raum* panel's decision and found it inapplicable where the developer was afforded a reasonable period of time in which to correct defects in his plan. There, following an initial rejection of his plan, the developer submitted a revised plan. The developer was notified of the planning commission's recommendation to reject the plan due to issues related to non-compliance with ordinances two weeks prior to the date of the final decision on his plan. The developer met with township employees during that two week period to discuss the deficiencies, but did not correct them. The Commonwealth Court panel held that the township acted in good faith in later rejecting the plan, since it had afforded the developer a reasonable opportunity to address the defects in his plan. *Herr*, 625 A.2d at 171.

The facts in the case *sub judice* are far closer to *Herr* than to *Raum.* This is not a case where the municipality provided a developer with no opportunity to revise technical defects in an initial plan. To the contrary, appellant submitted multiple revisions to his plan to the planning commission, all but the last of which were referred to the township engineer for review. Appellant's revisions resulted in substantial delays in the consideration of his plan. At the township commissioners' October 24, 2000 meeting, the commissioners set a firm dead-

line for appellant's final revision of November 14, 2000. Up to that point, the township engineer had extensively reviewed and responded to all of appellant's submissions. Our review of the township engineer's letters indicates that the engineer was *not raising new or additional defects in the plan*; rather, the plan suffered from the persistence of certain of the same defects noted in earlier reviews of appellant's plans. Thus, it is apparent that appellant was given ample, multiple opportunities to correct the defects in his plan in time to meet the township commissioners' November 14, 2000 deadline, but failed to do so.

We agree with appellee that there is no existing basis in law to suggest that a developer is entitled to infinite opportunities to address and remedy the defects in a subdivision plan. While reciprocal actions taken in good faith are required of the parties, a reciprocal good faith standard cannot simply eliminate the inherent discretionary powers of a municipality in this area. Appellant's plan raised multiple issues related to *non-compliance with ordinances*, and appellant was made aware of these defects on a number of occasions between July and October of 2000. That he failed to adequately address them all prior to the November 14, 2000 deadline does not establish bad faith on the part of the township in electing to act without granting him additional time to address the defects. In *Abarbanel v. Solebury Township*, 132 Pa.Cmwlth. 326, 572 A.2d 862, 864 (1990), the Commonwealth Court held that "a developer has a reciprocal good faith duty to submit revised plans in a reasonable and timely manner, which will enable a municipality to comply with its duties under § 508 and *Raum.*" We agree. In the case *sub judice*, it is easier to conclude that it was appellant who failed to act in good faith. Appellant failed to submit a conforming revised plan by the deadline set by the township commissioners after the township engineer had reviewed and commented upon several revisions of appellants plan. Given the history of appellants application, the township commissioners did not act in bad faith by failing to formally consider appellants additional and untimely submission.

Finally, we note that appellant argues that this case illustrates a "deficiency in the current practice of subdivision review by some municipalities." Brief of Appellant, 25. Appellant makes a list of suggestions about duties and procedural requirements that he would have this Court "adopt" to govern municipal review of development plans. It may well be that there is something in the give-and-take nature of development planning that counsels in favor of more standardization of the process. However, this Court is not the proper forum to request a revision in the MPCs review scheme. That task is essentially legislative. The Commonwealth Court has already responded to the lacunae in this area by adopting a standard of reciprocal good faith. Any more specific restriction upon the powers of a municipality is a matter properly reserved to the judgment of the General Assembly.

Accordingly, this Court having found no abuse of discretion or error of law below, the decision of the Commonwealth Court is affirmed.

Mr. Chief Justice CAPPY files a concurring and dissenting opinion in which Madame Justice NEWMAN joins.

### CONCURRING AND DISSENTING OPINION

Chief Justice CAPPY.

I join the opinion of the majority in all respects except for its conclusion that the Township Commissioners were not required to review Appellant Elias Kassouf's submission of November 22, 2000, prior to the Commissioners rendering a final decision on his application for subdivision approval. The record is replete with evidence that the Commissioners engaged in a virtual war of attrition against this developer and this development, and thus, acted in less than good faith in considering Appellant's land use application. In light of the Commissioner's recalcitrant conduct and in fairness to both parties, I would remand this matter for the Commissioners to fully consider the letter Appellant submitted on November 22, 2000, in response to the Township engineer's review of Appellant's November 14, 2000, plan; to give Appellant a "last

chance" opportunity to respond to any objections or modify his plan; and for final consideration of the plan by the Commissioners.

First, as acknowledged by the majority, it is far from clear whether the Commissioners considered Appellant's November 22, 2000, letter submitted in response to the Township Engineer's review of Appellant's plan. Majority Opinion at pp. 235–37, 883 A.2d at 474. The Commissioners' decision letter makes vague references to a letter dated November 27, 2000, however, no such letter exists. Even if, as the majority supposes, the Commissioners meant Appellant's letter of November 22, 2000, but simply erred in their reference thereto, there is no indication that the Commissioners fully considered the letter prior to voting—indeed the record strongly suggests just the opposite, that the Commissioners did not review Appellant's revised plan.[1]

Second, while I agree with the majority that, in general, "reciprocal actions taken in good faith are required of the parties" and that "a reciprocal good faith standard cannot simply eliminate the inherent discretionary powers of a municipality in this area," Majority Opinion at pp. 237–39, 883 A.2d at 475, the majority's analysis of the parties' conduct focuses solely on the shortcomings of Appellant. I believe that the majority fails to consider the entire experience of the parties regarding the process of obtaining the Township's approval for the subdivision, which clearly establishes an equal lack of good faith on the part of the Township.

Specifically absent from the majority's analysis regarding the good faith of the parties is any discussion of the litigation at the initial stages of the subdivision approval process. In early 1998, Appellant sought approval by the Township of the development of Appellant's property as a residential subdivision. Approval was sought under the applicable ordinance as well as the then-applicable steep-slope ordinance. The Town-

---

1. For example, the President of the Board of Commissioners, Craig P. Steven, expressed discomfort with voting on the plan without reviewing the revised plans, R.R. 404, and the record suggests that the other Commissioners did not even see the revised plan. R.R. 400–01, 404.

ship denied steep-slope approval. Appellant appealed this determination to the Court of Common Pleas of Allegheny County, which in October 1998, reversed the Township's decision and granted steep-slope approval. Yet even after the court's order granting steep-slope approval, in mid–1999, the Township boldly required Appellant to obtain a *new* steep-slope approval before he would be permitted to file his subdivision plan. This was because the Township had repealed the old steep-slope ordinance and had replaced it with a new steep-slope ordinance. Again, Appellant was forced to seek recourse in the courts and on November 15, 1999, the Court of Common Pleas of Allegheny County ruled that the Township could not reject Appellant's prior steep-slope approval by repealing the prior ordinance and enacting a new steep-slope ordinance.

Thus, the longer view of this seven-year odyssey not only reveals an obdurate Township, employing dubious methods to prevent development of this property but also brings the events that followed into their proper focus.

Thereafter, in June 2000, Appellant filed an application for final subdivision approval. The Township Commissioners initially rejected Appellant's application, determining that it was incomplete. After re-submitting the application in July 2000, the Commissioners approved referral of the plan for consideration by the Township Planning Commission. The application also was reviewed by the Township engineer, who found 66 defects in the application. Thereafter, Appellant and the Planning Commission engaged in a lengthy period of discussion to arrive at a plan that was acceptable to the Township. Certain defects remained outstanding. Concessions, however, were made by Appellant including a reduction in the number of lots from 19 to 15. Ultimately, the Planning Commission recommended denying the plan on October 18, 2000.

The matter was then referred to the Township Commissioners. Specifically, the plan was scheduled for the agenda for decision by the Commissioners only six days later—October 24, 2000. In light of the date on which the Township Commissioners were to consider the plan, Appellant revised the plan

and on October 23, 2000, Appellant submitted the plan for the Commissioner's October 24th meeting.

At the October 24, 2000 meeting, the Commissioners were hesitant to consider the plan as it had only been recently received. Appellant expressed his belief that the Commissioners were not required to act that evening, and the Township solicitor recommended granting Appellant an extension. The Commissioners set November 14, 2000 as the date for Appellant to submit a final plan, indicating that a decision would be made at their November 28, 2000, meeting. Appellant agreed to this three-week period to file his plan, with, according to Appellant, the proviso that the Township engineer would promptly comment on Appellant's October 23, 2000 submission.[2]

The Township engineer, however, did not offer his comments on the plan prior to its due date—November 14. Without the engineer's comments on the prior plan, and the looming deadline, Appellant submitted a revised plan on November 14th. It was not until November 17, 2000, three days after Appellant's plan was due, that the Township's engineer responded to Appellant's prior plan. On November 22, 2000, five days after receipt of the Township engineer's comments, Appellant resubmitted his plan.

A review of the transcript reveals that the November meeting appeared to be a foregone conclusion. When the plan was placed before the Commissioners as an agenda item, the first comment on the plan was a motion to reject the plan. There was no request for a report by the Township engineer or from the Township solicitor, and there was no request for comments by Appellant. The Commissioners immediately considered a motion for rejection. After limited discussion, the Chairman called for a vote after expressing his reservation regarding

2. Although an express agreement by the Township's engineer to provide a response prior to the due date for the submission of the final plan does not appear to be contained in the record, it is axiomatic that receipt of the Township engineer's response to the October 23, 2000 submission after the date on which the "final" submission was due would be valueless to Appellant.

voting without reviewing the most recent submission. The Commissioners unanimously rejected Appellant's plan.

In conclusion, while I join the majority's opinion in virtually all respects, I respectfully dissent from its analysis regarding the respective good faith of the parties. While Appellant may have not at all times acted in good faith, the Township, as evidenced by its seven-year battle against development of this property, also acted in less than good faith. Accordingly, in fairness to both parties, I would remand the matter to the Commissioners to consider the letter Appellant submitted on November 22, 2000, in response to the Township engineer's review of Appellant's November 14, 2000 plan, to give Appellant a final opportunity to respond to any objections made thereto or a final chance to modify his plan, and for the Commissioners to render a final determination approving or disapproving of the plan.

Madame Justice NEWMAN joins this concurring and dissenting opinion.