# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark X. DiSanto,  
            Appellant

      v.

Board of Commissioners of  
Susquehanna Township

      v.

Charles C. Post and Carl S. Hisiro

:
:
:
:
:
:
:
:
: No. 679 C.D. 2016
: Argued: December 12, 2016
:
:
:
:
:

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge  
                  HONORABLE ANNE E. COVEY, Judge  
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**  
**SENIOR JUDGE COLINS**                     **FILED:  June 1, 2017**

        Before this Court is the appeal of Mark X. DiSanto (Applicant) of the March 31, 2016 order of the Dauphin County Court of Common Pleas (Trial Court) dismissing Applicant's appeal of the January 8, 2015 denial by the Board of Commissioners of Susquehanna Township (Board) of Applicant's final subdivision and land development plan (Plan) based upon the Plan's failure to adhere to the Susquehanna Township's (Township) Subdivision and Land Development Ordinance (SALDO).  For the following reasons, we affirm the Trial Court's order.[1]

---

[1] Where, as here, the trial court exercises *de novo* review in a land use appeal, taking additional evidence and issuing its own findings of fact and conclusions of law, this Court's standard of

Applicant's Plan proposed to subdivide 4.15 acres (Property) in accordance with the Conservation Design Overlay District (Overlay District) established by the Township's Zoning Ordinance. The Property is located in the R-1 zoning district, which is a low-density residential district. The Overlay District applies to R-1, R-2 and R-4 residential zoning districts within the Township, permitting an applicant to submit development plans in accordance with either the requirements of the Overlay District or with the base residential zoning district. (Zoning Ordinance § 27-1702.) The Overlay District is intended to enhance design flexibility by reducing the dimensional requirements that apply within the R-1, R-2 and R-4 zoning districts with the aim of supporting greater preservation of the natural features on the land being developed. (Zoning Ordinance §§ 27-1701, 27-1702.)

The Plan was reviewed by the Planning Commission on October 27, 2014 and November 24, 2014, and a hearing was held before the Board on January 8, 2015. The Board issued a written decision on January 14, 2015 denying Applicant approval to proceed with the Plan on the basis that: (i) the Plan failed to comply with Section 22-1004 of the SALDO, which addresses the requirements for the preservation of steep slopes; (ii) the Plan failed to adhere to the purpose of the Overlay District (Zoning Ordinance § 27-1701), because the Plan "did not protect environmentally sensitive areas or support preservation and expansions of green space nor did it develop safe pedestrian connections to activity nodes, neighborhoods and recreational spaces"; and, in the alternative, (iii) the Plan failed to comply with the requirements of the R-1 District, specifically density, lot coverage, and dimensional requirements such as setbacks. (January 14, 2015

review is whether the trial court has committed an error of law or an abuse of discretion. *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061, 1064 (Pa. 2007).

Board Letter Decision, ¶¶1-3.)  Applicant timely appealed the Board's denial to the Trial Court.

The Trial Court opened the record and heard additional evidence in the form of deposition testimony.  The Trial Court also permitted the intervention of Charles C. Post (Intervenor), and Carl S. Hisiro.[2]  The Trial Court issued a memorandum opinion and order affirming the Board on March 31, 2016, and, following appeal by Applicant, a statement in lieu of a Rule 1925(a) memorandum opinion on June 22, 2016, for purposes of appellate review.

Before this Court, Applicant argues that the Board was equitably estopped from denying the Plan because of representations made to Applicant by the Township's Engineer and the Township's Planning Commission that the Plan complied with the Township's Zoning Ordinance and SALDO.  Applicant argues that the Township's Engineer and the Planning Commission were in the best position to comment on the interpretation of the applicable ordinances and, therefore, he justifiably relied upon their representations in good faith, proceeding with the Plan where it could have otherwise been amended to come into compliance prior to submission to the Board.

The Township contends that Applicant has waived his equitable estoppel argument by failing to raise the issue in his Notice of Appeal.  The Trial Court agreed with the Township.  Specifically, the Trial Court stated: "This issue was not raised in [Applicant's] Notice of Appeal nor was there any evidence to put the [Township] on notice to such a claim.  [Applicant's] Notice of Appeal focused on the three specific grounds on why the Board did not approve [Applicant's] Plan.  As such, [Applicant's] estoppel argument, which was first raised in his argument

---

[2] Mr. Hisiro is no longer participating in the appeal.

3

brief, shall be denied/and or waived." (Trial Court Op. at 9 (emphasis in original).) The Township also argues that the Board is vested with authority to determine whether a plan is approved and the Township's Engineer and the Planning Commission cannot bind the Board.

Intervenor argues that Applicant's equitable estoppel argument attempts to establish a rule of law that where a township officer does not identify a violation of the applicable ordinances then a plan application may not be denied on that basis by a board. Intervenor contends that this rule would turn due process on its head, as it denies any citizen input, and renders meaningless "a well-defined, orderly process encompassing review from Township employees, review by Planning Commissioners, comments from citizens, and finally, a decision by the Board." (Intervenor Brief at 7.)

Our Supreme Court has defined equitable estoppel, as "a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity." *Novelty Knitting Mills v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). Applicant's Notice of Appeal does not contain the words "equitable estoppel." However, Applicant argues that the lack of these magic words is not fatal to his claim.

In support of Applicant's argument that estoppel may be considered absent a specific assertion of the claim, Applicant relies upon *Northcroft v. Edward C. Michener Associates, Inc.*, 466 A.2d 620 (Pa. Super. 1983). In *Northcroft*, the Superior Court concluded that, unlike in instances where equitable estoppel is used

4

as a defense and must be pled, a plaintiff's "affirmative use of equitable estoppel is not waived by the failure to raise it in the trial court…consideration of its applicability is proper because the character of the plaintiff's action as stated in his complaint and the evidence at trial are amenable to an estoppel analysis, even if those specific words were never used." *Id*. at 626 (internal citations omitted). In reaching this conclusion, the Superior Court relied upon *Straup v. Times Herald*, 423 A.2d 713 (Pa. Super 1980), *rejected on other grounds by Kreutzer v Monterey County Herald Co.*, 747 A.2d 358 (Pa. 2000), wherein it had concluded that "because appellants did not use the labels 'equitable estoppel' or 'detrimental reliance' at some prior stage of the proceedings does not mean that they have waived their right to so frame the issue now." *Straup*, 423 A.2d at 719.

In paragraph 11 and 12 of Applicant's Notice of Appeal, Applicant asserts that neither the Township nor the Board identified issues with the Plan prior to its denial, thereby denying Applicant the opportunity to make changes to the Plan. (Notice of Appeal, ¶¶11-12, R.R. at 22a.) In addition, under the grounds for appeal identified by Applicant in his Notice of Appeal, Applicant asserts that the Board's decision was inequitable and unjust and that the Board's decision violated due process of law. (*Id*. ¶28, R.R. at 25a-26a.) We conclude that this was sufficient to place the issue of whether the Board was equitably estopped from denying Applicant's Plan approval before the Trial Court even though Applicant's use of the words "equitable estoppel" did not come until he filed his argument brief with the Trial Court. Our conclusion is buttressed by the procedural posture of the Trial Court. In the instant matter, the Trial Court took additional evidence and conducted a *de novo* review of the record and proceedings before the Board. As a result, the Trial Court was in a position to receive additional evidence and, unlike

5

in *Northcroft*, did not have to determine whether the existing issues as framed and the evidence contained in the record certified in the proceedings below were amenable to an estoppel analysis before examining whether estoppel was established by Applicant.

Although Applicant did not waive his estoppel argument, we conclude that the Board was not estopped from denying the Plan. There is no dispute that equitable estoppel can properly be utilized against local municipalities[3] and in *Cicchiello v. Bloomsburg Zoning Hearing Board*, 617 A.2d 835 (Pa. Cmwlth. 1992), this Court concluded "that under appropriate circumstances, estoppel could be applied," to a zoning hearing board's recommendation to a landowner to pursue a change in zoning. *Id*. at 837.

Our conclusion in *Cicchiello* arose from a set of factual circumstances distinct from those present here and which prove fatal to Applicant's claim; in *Cicchiello*, it was the zoning hearing board whose implied promise the landowner alleged she justifiably relied upon to her own detriment. The landowner in *Cicchiello* sought zoning relief to permit her to return to a prior use of the property which was no longer permitted due to a change in the underlying zoning. *Id*. at 836. The zoning hearing board denied the landowner relief in *Cicchiello* but suggested that the landowner seek rezoning of the property and then return to the

---

[3] The party asserting equitable estoppel must establish by clear, precise and unequivocal evidence that the party sought to be estopped (1) must have intentionally or negligently misrepresented some material fact, (2) knew or had reason to know that the other party would justifiably rely on the misrepresentation and (3) induced the other party to act to his detriment because of his justifiable reliance on the misrepresentation. *Borkey v. Township of Centre*, 847 A.2d 807, 811 (Pa. Cmwlth. 2004). The doctrine of estoppel, however, is not cognizant against a municipality where the agent of the municipality that is clothed in its power acts "in excess of [the municipality's] powers, or in violation of positive law, or for an act requiring legislative or executive action." *Ervin v. City of Pittsburgh*, 14 A.2d 297, 301 (Pa. 1940).

Board to request a variance; the landowner succeeded in having the property rezoned but when she then sought a variance, the zoning hearing board denied her request. *Id*. Although this Court concluded equitable estoppel was a valid legal theory in this context, we nevertheless held in *Cicchiello* that the zoning hearing board's advice went no further than the speculative, suggesting that if the landowner sought rezoning, then the zoning hearing board would be allowed to consider allowing the prior use of the property as a nonconforming use. *Id*. at 838.

The advice provided to the appellant in *Cicchiello* is similar to the assistance Applicant alleges he received from the Township's Engineer and the Planning Commission in the instant matter. However, unlike in *Cicchiello*, Applicant here does not allege that the Board itself made an implied promise that he relied upon to his own detriment. Applicant at all times was aware that it was the Board who had the sole authority to render a final decision regarding his Plan. This Court has repeatedly held that equitable estoppel will not lie where the party asserting estoppel knew or should have known that the alleged promisor was without authority to effectuate the alleged promise. *See, e.g., Strunk v. Zoning Hearing Board of Upper Milford Township*, 684 A.2d 682, 685 (Pa. Cmwlth. 1996) (landowners could not justifiably rely on zoning officer's statements regarding adequacy of sewage disposal system where zoning officer expressly directed landowners to the sewage enforcement officer before proceeding); *Pennsylvania Liquor Control Board v. Venesky*, 516 A.2d 445, 449 (Pa. Cmwlth. 1986) (employee did not justifiably rely on supervisor's promise of promotion where he knew that it was the Liquor Control Board and Civil Service Commission that effectuated promotions). Therefore, Applicant's equitable estoppel claim is insufficient on its face.

7

Next, Applicant argues that the Board and the Trial Court erred when they cited the Plan's failure to comply with Section 27-1701 of the Zoning Ordinance, which sets forth the "Intended Purpose" of the Overlay District, as a sufficient basis for denial of the Plan. Applicant argues that the Board's denial falls short of the requirements of Section 508(2) of the Municipalities Planning Code[4] (MPC), 53 P.S. § 10508(2), and analogizes the denial based on the intended purpose section of the Overlay District to cases involving denial of a special exception or a license based on amorphous standards.

The Township argues that to deny enforcement of the purpose section of the Overlay District would contravene the Statutory Construction Act[5] by depriving an entire section of the Zoning Ordinance of meaning. Intervenor argues that the Trial Court was within its discretion to find that the Plan violated the intent of the Overlay District. Intervenor contends that, as an overlay of the R-1 District, consideration of intent is crucial to prevent the underlying district from being eviscerated thereby allowing an applicant to accomplish rezoning by other means. Intervenor argues that the language in Section 27-1701 expresses an intent to "protect" and "preserve" and to develop "pedestrian connections" and "recreational spaces," and that in the case of the Property, nothing needs protection beyond what the slope and wetlands regulations already protect and that the Plan contains no pedestrian connections. Intervenor further argues that to comply with Section 27-1701, the Plan needed to adhere to the explicit standards for open space in the Overlay District contained in Section 22-1008 of the SALDO, which supports the intent of the Overlay District. Intervenor contends that the Plan failed to comply

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[5] Act of December 6, 1972, P.L. 290, 1 Pa. C.S. §§ 1501-1991.

with Section 22-1008, which provides "Design Standards for Greenways/Open Space in Conservation Design Subdivisions," because the Plan only proposes 2.75 acres of open space, containing a wet ravine not suitable for active recreational uses, and the Plan had no proposed paths. (*See* SALDO § 22-1008(1)(B)(2), (4), & (7).)

Section 27-1701 of the Township's Zoning Ordinance spells out the purpose of the Overlay District and provides:

> The Conservation Design Overlay District is intended to provide greater design flexibility, efficiency, and options for conserving open land and areas containing unique and sensitive natural features and reducing the infrastructure needs of development. The District regulations implement adopted goals in the Susquehanna Township Comprehensive Plan, as amended, including to continue to protect environmentally sensitive areas and support preservation and expansion of green spaces and to continue to actively develop safe pedestrian connections to activity nodes, neighborhoods and recreational spaces.

(Zoning Ordinance § 27-1701.) Section 508(2) of the MPC requires that a decision denying approval "shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon." 53 P.S. § 10508(2). In *Kassouf v. Township of Scott*, 883 A.2d 463 (Pa. 2005), our Supreme Court concluded that Section 508(2) of the MPC did not oblige a municipality "to provide the applicant with a primer or treatise on the contents of its ordinances. Rather, the measure of the adequacy of a decision depends on whether it is sufficient to permit the applicant to understand the specific nature of the deficiency identified, so as to

9

permit the applicant to take whatever further action it deems necessary or appropriate." *Kassouf*, 883 A.2d at 474.

The Board's citation to Section 27-1701 of the Township's Zoning Ordinance in support of its denial of Applicant's Plan falls short of this mandate. Standing alone, Section 27-1701 offers no objective criteria that would permit Applicant to understand the specific nature of the deficiency and, if Applicant so chose, to take concrete action to remedy the deficiency. The courts of this Commonwealth have repeatedly held that a board may not reject a subdivision and land development plan based upon amorphous criteria, including noncompliance with the purpose of an ordinance or mere inconsistencies with a comprehensive plan. *See, e.g., Coretsky v. Board of Commissioners of Butler Township*, 555 A.2d 72, 74 (Pa. 1989); *CACO Three, Inc. v. Board of Supervisors of Huntington Township*, 845 A.2d 991, 995 (Pa. Cmwlth. 2004); *Anderson v. Board of Supervisors of Price Township, Monroe County, Pennsylvania*, 437 A.2d 1308, 1309 (Pa. Cmwlth. 1981); *Goodman v. Board of Commissioners of the Township of South Whitehall*, 411 A.2d 838, 841 (Pa. Cmwlth. 1980).

Intervenor makes a reasonable argument that we need look only to Section 22-1008 of the SALDO to find the objective requirements matching the more amorphous goals identified in the purpose section of the Overlay District. However, this argument only serves to highlight what is lacking in the Board's decision denying Applicant's Plan. The test of whether a decision satisfies the mandate of Section 508(2) of the MPC is not whether the applicant had knowledge of the plan's deficiencies but rather, whether the reasons for denial are contained within the four corners of the written decision. *Lease v. Hamilton Township*, 885 A.2d 684, 690 (Pa. Cmwlth. 2005); *Warwick Land Development v. Board of*

10

*Supervisors of Warwick Township, Chester County*, 695 A.2d 914, 920 (Pa. Cmwlth. 1997). The Board did not cite to Section 22-1008 of the SALDO and its reliance on Section 27-1701 as an independent basis for denying Applicant's Plan was in error, as was the Trial Court's conclusion that Section 27-1701 provided a sufficient basis upon which to deny Applicant's Plan.

Despite our conclusion that the purpose section of the Overlay District did not provide the necessary objective criteria to serve as an independent basis upon which to support denial of Applicant's Plan, we affirm the order of the Trial Court because the Board's rejection of the Plan on the basis of the Plan's failure to comply with Section 22-1004 of the SALDO, which addresses preservation of steep slopes, satisfied Section 508(2) of the MPC and was supported by substantial evidence.

Applicant challenges the steep slope provision of the SALDO on a number of grounds. First, Applicant argues that the entirety of Section 22-1004 of the SALDO is predicated on the preservation of slopes and that this implicitly distinguishes manmade from natural slopes. Applicant further argues that this interpretation is given textual support by subsection D, which speaks of "natural grades." Next, Applicant contends that even if the SALDO cannot be read to distinguish between natural and manmade slopes, the Plan should have still been approved because Applicant's Engineer, Timothy L. Mellott, P.E., was advised by the Township that the steep slope provision in the SALDO did not apply to manmade slopes, and because none of the existing manmade slopes disturbed under the Plan exceeded 25% and each of the slopes impacted would be disturbed in conjunction with the siting of single-family dwellings, their access driveways and/or septic systems, as is explicitly permitted by the SALDO. Applicant also

11

contends that the slope calculation used by the Township was in error. Finally, in the alternative to Applicant's argument that the Plan complied with the steep slope provision of the SALDO, Applicant contends that Sections 22-301 and 22-1004 are vague on how a slope is calculated and whether there is a distinction between manmade and natural slopes. Therefore, Applicant contends these sections must be construed in favor of Plan approval pursuant to Section 603.1 of the MPC[6], 53 P.S. § 10603.1, and common law precedent extending the principle that ambiguous land use ordinances must be interpreted broadly so that a landowner may have the benefit of the least restrictive use of his or her land.

The Township argues that the evidence demonstrates that Applicant's Engineer knew there were steep slopes and that the Plan violated the steep slope provision of the SALDO. The Township argues that the SALDO does not contain language differentiating between manmade and natural slopes and, therefore, there is no distinction. The Township argues that the definition of "slope" includes the word "usually" in describing the calculation of slopes because ultimately the SALDO recognizes that the question is an engineering problem best left to engineers.

Intervenor argues that any distinction between manmade and natural slopes is nonsensical as "[i]n a state like ours, one would be hard pressed to find land not somehow changed by man in his long history here." (Intervenor Brief at 3.) Intervenor further contends that the Plan explicitly violates the steep slope provision of the SALDO because "it proposes to disturb slopes above 15% and above 25%, doubling them with fill so [Applicant] can construct a road. The fill is

---

[6] *Added by* the Act of December 21, 1988, P.L. 1329.

not for a driveway, a portion thereof, the siting of a house or a septic system." (Intervenor Brief at 2.)

Section 22-301 of the SALDO defines a "slope" as "the face of an embankment or cut section; any ground whose surface makes an angle with the plane of the horizon.  Slopes are usually expressed in a percentage based upon vertical difference in feet per 100 feet of horizontal distance."  (SALDO § 22-301.) Section 22-1004 of the SALDO regulates steep slopes and provides:

> Areas of steep slope shall be <u>preserved</u> as required below.
>> A.  All grading and earthmoving on slopes exceeding 15% shall be minimized.
>> B.  No site disturbance shall be allowed on slopes exceeding 25% except grading for a portion of a driveway accessing a single-family dwelling when it can be demonstrated that no other routing which avoids slopes exceeding 25% is feasible.
>> C.  On slopes of 15% to 25%, the only permitted grading beyond the terms described above, shall be in conjunction with the siting of a single-family dwelling, its access driveway and the septic system, if required (which should typically be designed with a long, narrow drainage field following the land contours).
>> D.  Grading or earthmoving <u>on all sloping lands of 15% or greater</u> shall not result in earth cuts or fills whose highest vertical dimension exceeds six feet, except where in the judgment of the Board of Commissioners no reasonable alternatives exist for construction of roads, drainage structures and other public improvements, in which case such vertical dimensions shall not exceed 12 feet.  Roads and driveways shall follow the line of existing topography to minimize the required cut and fill. <u>Finished slopes of all cuts and fills shall be required to minimize disturbance of natural grades.</u>

13

(SALDO § 22-1004 (emphasis added).)

The Trial Court concluded that the text of Sections 22-301 and 22-1004 is not ambiguous and that neither Section 22-301 defining slope nor Section 22-1004 regulating steep slopes distinguishes between a manmade slope and a natural slope. (SALDO §§ 22-301, 22-1004.) The definition of slope refers to "any ground." The use of "preserved" in Section 22-1004 of the SALDO clearly refers, as the text itself addresses, to what must be preserved during development rather than preservation in a historical sense that differentiates between slopes created by nature and those created by human activity. Moreover, Subsection D does not support an alternate interpretation. Subsection D uses the term "natural grade" to refer to the conditions existing on the Property prior to site preparation and construction, and the requirement that use of cut and fill in preparation and construction within the Township minimize disturbance of existing topography. The text is not ambiguous and, as the Trial Court concluded, it explicitly does not distinguish between manmade and natural slopes. Applicant's interpretation of the text urges this Court to usurp the role of the legislative body by adding to the text language which would alter the clear meaning. Furthermore, Intervenor's logic concerning the absurdity of the distinction has merit and would lead this Court farther down the path secured to the legislative body; if we were to read into the text a distinction between manmade and natural slopes, how would we then determine at what point a slope remains manmade and when in time it is to be considered to have become a natural part of the Property's topography.

The crux of Applicant's remaining argument is that the Trial Court erred when it found that the weight of the evidence did not support Applicant's interpretation of Section 22-1004 of the SALDO as distinguishing between

14

manmade and natural slopes, and that the slope calculation used by the Township flowed from the clear text of the SALDO. However, it is not for this Court to reweigh the evidence on appeal under the guise of a review for abuse of discretion; in an appeal from a decision of the board where the trial court has taken additional evidence, it is the function of the trial court to act as fact-finder and the trial court is the sole arbiter of credibility and the weight afforded the evidence. *Gaughen LLC v. Borough Council of Borough of Mechanicsburg*, 128 A.3d 355, 362 n.4 (Pa. Cmwlth. 2015); *In re Thompson*, 896 A.2d 659, 668-669 (Pa. Cmwlth. 2006); *D'Emilio v. Board of Supervisors, Township of Bensalem*, 628 A.2d 1230, 1233 (Pa. Cmwlth. 1993). Applicant's argument regarding the calculation method used in the definition of slope is particularly unpersuasive in light of the record.

The Trial Court credited and relied upon the testimony of the Township's Engineer, Robert C. Grubic, P.E., that the legislative body included the word "usually," in the text because while "slopes are *usually* expressed in a percentage based upon vertical difference in feet per 100 feet of horizontal distance," this method of calculation is not always feasible and the legislative body determined that slope calculation was an engineering problem. (SALDO § 22-301 (emphasis added).) Both parties submitted evidence from their engineering experts. The Trial Court discussed the deposition testimony given by the Township's Engineer, Mr. Grubic, and Applicant's Engineer, Mr. Mellott. The Trial Court found that the weight of the evidence did not support Applicant's argument. The Trial Court found that the Plan contained slopes in excess of 25% that did not fall within the exceptions contained in the Section 22-1004 of the SALDO. The Trial Court found that in his deposition, "Mr. Mellott candidly admits that the Plan shows slopes exceeding 25%." (Trial Court Op. at 8.)

15

Applicant argues that the Trial Court's finding is undermined by the fact that both Applicant's Engineer and the Township's Engineer used a calculation method that did not contain a horizontal distance of 100 feet and that when Applicant's Engineer did use this method following rejection of the Plan, he concluded that the slopes did not quite reach 25%. However, this argument relies both on an interpretation of the steep slope provisions of the SALDO that is contrary to the text of the ordinance and to the weight afforded the evidence by the Trial Court.

Finally, throughout Applicant's arguments to this Court, Applicant contends that the Board acted in bad faith by denying the Plan because the Township's experts and the Planning Commission did not alert Applicant to violations of the steep slope provision; instead, the noncompliance with the steep slope provisions in the SALDO originally came to the fore as the result of citizen comments. In *Kassouf*, our Supreme Court held that the MPC contemplates a reciprocal duty of good faith on the part of subdivision and land development approval applicants and the municipality. 883 A.2d at 476. The Court in *Kassouf* stressed that "[w]hile reciprocal actions taken in good faith are required of the parties, a reciprocal good faith standard cannot simply eliminate the inherent discretionary powers of a municipality in this area." *Id.* The MPC also contemplates a significant role for citizens within the community where land development approval is sought. The process is a public one. Moreover, municipalities are permitted to hold public hearings before acting on any subdivision and land development plan, and private parties, like Intervenor, have the opportunity to intervene in an appeal to the court of common pleas. Sections 508 and 1004-A of the MPC[7], 53 P.S. §§ 10508, 11004-A.

---

[7] Section 1004-A of the MPC, *added by* the Act of December 21, 1988, P.L. 1329.

16

In the instant matter, Applicant chose to seek a waiver of preliminary plan submission and seek final approval. Although the technical experts who reviewed the Plan did not identify noncompliance with the steep slope provisions of the SALDO, Intervenor did so before the Planning Commission and the Board. Having notice of Intervenor's argument that the Plan did not comply with the SALDO, Applicant did not amend the Plan, withdraw the Plan, or seek to have the Plan considered as preliminary rather than final. When the Plan went before the Board, the Board focused on the issue of whether the Plan complied with the steep slope provisions raised by Intervenor. The Board concluded that the Plan was not in compliance and issued a written decision stating:

> Section 22 -1004 of the [SALDO] requires preservation of steep slopes and prohibits site disturbance on slopes exceeding twenty five (25 %) percent except grading for a portion of a driveway for a single -family dwelling in certain instances. The same section permits grading on slopes fifteen (15 %) to twenty five (25 %) percent only in conjunction with the placement citing of a single-family dwelling its access driveway and septic systems. Finally, the cited Section of the [SALDO] prohibits grading or earth moving on all sloping lands of fifteen (15 %) percent or greater which result in earth cuts or fills whose highest vertical dimensions exceeds six (6) feet, except where, in the judge of the Board of Commissioners, no reasonable alternative exists. Your plan showed disturbance of slopes above fifteen (15 %) percent not within those instances allowed by the Ordinance and exceeding twenty five (25 %) percent.

(January 14, 2015 Board Letter Decision, ¶1.) The Board's statement complies with the requirements of Section 508 of the MPC, 53 P.S. § 10508, and leaves no ambiguity regarding the steps Applicant must take to bring the Plan into

17

compliance. While it is possible that the Plan may have been approved if it were not for the advocacy of Intervenor, it does not follow from this possibility that there was bad faith. The Board has a duty to the public as well as to the applicant. In the instant matter, the Board determined, at its first opportunity to do so, that the Plan failed to comply with the express terms of the SALDO and rejected the Plan. While we do not discount the difficulty and expense borne by an applicant in seeking subdivision and land development approval, we cannot conclude that the process was tainted on the basis that citizen participation brought to light a violation of the applicable ordinance and thwarted an applicant's efforts.

Accordingly, the Trial Court is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark X. DiSanto,               :
        Appellant       :
                       :
        v.            :
                       :
Board of Commissioners of   : No. 679 C.D. 2016
Susquehanna Township       :
                       :
        v.            :
                       :
Charles C. Post and Carl S. Hisiro  :

## **O R D E R**

AND NOW, this 1ˢᵗ day of June, 2017, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**