**WARWICK LAND DEVELOPMENT, INC., Appellant,**

v.

**The BOARD OF SUPERVISORS OF WARWICK TOWNSHIP, CHESTER COUNTY, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1997.

Decided May 12, 1997.

Publication Ordered May 28, 1997.

Susan E. Line Boswell, Media, for appellant.

Patrick C. O'Donnell, West Chester, for appellee.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Warwick Land Development, Inc. (Property Owner) appeals from an order of the Court of Common Pleas of Chester County (trial court) dismissing Property Owner's appeal from the denial of its Application for Preliminary Subdivision Approval (Application) by the Board of Supervisors of Warwick Township (Board of Supervisors).

Property Owner sought subdivision approval to modify a 23.7 acre parcel of land (Steepleview Parcel) located in an R–3 Residential Zoning District on the south side of Troop Road in Warwick Township (Township). The Steepleview Parcel contains a lawful nonconforming mobile home park with 29 mobile home sites, as well as one single-family detached dwelling. Use of the Steepleview Parcel for mobile homes predated the current Township Zoning Ordinance, which now permits mobile home parks in R–3 Districts as conditional uses requiring Planned Residential Development (PRD) approval and a minimum lot size of thirty-five (35) contiguous acres in the R–3 District. (Township Zoning Ordinance at § 701D.4, R.R. at 117a; § 902B, R.R. at 120a.)

Under its subdivision plan (Steepleview Plan), dated January 20, 1994, Property Owner proposed subdividing the Steepleview Parcel into eight lots, confining the currently existing mobile home sites and single-family dwelling to one lot of 14.9 acres and creating single-family detached dwellings on the seven remaining lots.[1] At a December 6, 1994 meeting, the Board of Supervisors denied Property Owner's Application, primarily on grounds that it increased the level of nonconformity of the mobile home park by reducing its lot area from 23.7 to 14.9 acres.

In order to create a lot large enough for a PRD, Property Owner had proposed adding a portion of an adjacent 26 acre parcel of property (Troop Hill Parcel), also in the R–3 District, to that portion of the Steepleview Parcel containing the mobile homes, so that the combined properties would fulfill the 35 acre minimum requirement for a PRD. The Township Zoning Ordinance defines a PRD as:

> A contiguous area of land to be developed as a single entity for a number of dwelling units, the development plan for which must comply with the lot size, bulk or type of dwelling, density, lot coverage, required open space and other provisions of article 9.

(Township Zoning Ordinance § 201, R.R. at 111a.) Article 9 provides that each PRD "shall have a minimum contiguous area of thirty-five (35) acres within the R–3 District." (Township Zoning Ordinance § 902B, R.R. at 120a.) The Township Zoning Ordinance does not define contiguous; thus, as part of its Application, but without actually filing a PRD application, Property Owner asked the Board of Supervisors to confirm whether these portions of the Steepleview and Troop Hill Parcels are "contiguous" for the purpose of qualifying as a PRD under section 902B of the Township Zoning Ordinance.

In disapproving the Application, the Board of Supervisors rejected this approach, concluding that the Steepleview and Troop Hill Parcels are not under common ownership,[2] nor under common control pursuant to a written agreement that development will be under a single plan with common responsibility and authority.[3] (See Township Zoning Ordinance § 902A, R.R. at 120a.) The Board of Supervisors also denied approval based on its interpretation of the term "contiguous," concluding that, because the two parcels are divided by a public highway, Troop Road, they are not contiguous and, thus, could not be combined to satisfy the minimum acreage requirements for a PRD. (Appellant's brief, Appendix 2 at 2, Trial court op. at 2.)

---

1. The Township Zoning Ordinance requires a minimum lot area of one acre in an R–3 Residential District for single-family detached dwellings. (Township Zoning Ordinance § 703A.1, R.R. at 117a.) The seven new dwellings would be on lots in excess of this one acre minimum lot size and, thus, conform completely to this requirement of the Township Zoning Ordinance.

2. The Steepleview Parcel is owned by Warwick Land Development, Inc., while Pine Hill Associates, Inc. owns the Troop Hill Parcel. John C. Shelton, Jr. is sole shareholder and President of both corporations, and has authority to act for and on behalf of both corporations.

3. As a condition of eligibility for a PRD, the Township Zoning Ordinance, § 902A, provides:

> Any tract of land proposed for development shall be in one (1) ownership or in case of multiple ownership and/or several parcels, evidence shall be presented of a written agreement between the parties and owners involved that development will be in accordance with a single plan with common authority and common responsibility.

(R.R. at 120a.)

The Township Solicitor formally advised Property Owner of the Board of Supervisors' denial in a letter dated December 7, 1994 (Denial Letter). In its entirety, the Denial Letter provides:

> This is to formally advise that the Board of Supervisors of Warwick Township voted to deny the application of Warwick Land Development, Inc. for the subdivision known as "Steepleview" at its regular monthly meeting on December 6, 1994. Because you were at the meeting, you know of the action by the Board and this letter serves as the writing required under Section 508 of the Municipalities Planning Code.
>
> The Board denied the application for the reasons set forth in the review letter of Yerkes Associates, Inc. dated February 9, 1994, a copy of which is attached hereto and incorporated by reference herein. The Board further denied the subdivision on the basis of the Warwick Township Planning Commission recommendations of March 28, 1994, which were adopted by the Board of Supervisors and a copy of which is attached hereto and incorporated by reference herein.
>
> As you know, the Zoning Hearing Board of Warwick Township rendered its opinion on September 28, 1994 wherein your request for zoning relief was denied. That opinion was delivered to you on or about September 28, 1994 and is incorporated by reference herein.
>
> In addition to the plan objections set forth in the three documents referenced above, the issue which you raised and pressed to the Board regarding the provision of Section 902.B are addressed in the attached November 25, 1994 correspondence from Board Member Robert Johnson to fellow Board Members. As set forth therein and as determined by the [B]oard of Supervisors at its December 6 meeting, the Board has made a determination that Section 902.B does not apply and that the provisions of Section 201 wherein the terms "lot" and "lot line" are defined control the application for Steepleview and require its denial.
>
> Because the property in question fails to meet the minimum lot size of 35 acres for its current use, because the Zoning Hearing Board has denied your variance application, and because this property is defined by the terms of the Ordinance, as a separate and distinct lot, the subdivision request is denied.

(Appellant's brief, Appendix 1, p. 1–2.)

Property Owner appealed to the trial court,[4] which dismissed the appeal following

---

4. In its appeal to the trial court, Property Owner provides a history of the process it went through to obtain approval of its preliminary subdivision plan and confirmation that the portions of the Steepleview and Troop Hill Parcels to be included in the PRD are contiguous for that purpose. To aid understanding of the case, we summarize this history as follows:

(1) On August 3, 1993, Property Owner submitted to the Board of Supervisors an application and sketch plan for the subdivision of the 23.7 acre Steepleview Parcel into eight lots— seven single-family dwelling lots and an eighth lot of 14.24 acres, containing the existing 29 mobile home sites and single family dwelling. (R.R. at 7a.) The Township Engineer, Yerkes Associates, Inc., and the Township Planning Commission each reviewed the sketch plan and provided a review letter questioning whether Property Owner could reduce the 23.7 acre parcel containing the mobile homes to a 14 acre parcel under the Township Zoning Ordinance. (R.R. at 23a–28a.) The Board of Supervisors denied the sketch plan at a meeting on October 5, 1993. (R.R. at 8a–9a.)

(2) As a result of the October 5, 1993 meeting, Property Owner had a new sketch plan prepared, proposing to combine the nonconforming lot of the Steepleview Parcel with a portion of the Troop Hill Parcel to form a tract in excess of 35 acres so as to meet the requirements for a PRD. When this revised sketch plan was submitted to the Board of Supervisors on November 1, 1993, the Board of Supervisors raised the issue of whether the Steepleview and Troop Hill Parcels are contiguous. (R.R. at 9a–10a.) The Township Planning Commission reviewed the revised sketch plan at its November 16, 1993 meeting and concluded that the parcels were not contiguous. (R.R. at 29a.)

(3) On December 7, 1993, Property Owner sent a letter to the Township Solicitor requesting his opinion with respect to a proposed preliminary plan for the Steepleview Parcel under which eight lots would be created; seven lots would be at least one acre and contain a single family detached dwelling, while one lot of some 14 acres would contain 29 existing mobile homes and a single family dwelling. To support the plan, Property Owner contended that mobile homes, as a non-conforming *use*, could expand up to 50% under section 1912B.3 of the Township Zoning Ordinance, (R.R. at 113a), thus per-

oral argument on the matter. In doing so, the trial court explained that it could not say that two properties divided by a public roadway were contiguous as a matter of law. Further, the trial court determined that the reports incorporated in the Denial Letter contained adequate references to the code sections relied upon by the Board of Supervi-

sors to deny Property Owner's Application and, thus, the Denial Letter satisfied the requirements of section 508(2) of the Pennsylvania Municipalities Planning Code (MPC).[5] (Trial court op. at 4–6.)

▬ In its appeal to this court,[6] Property Owner argues that the Board of Supervi-

mitting an additional 15 new mobile homes. Property Owner intended to "use up" these 15 homes with the 7 single-family homes on the one-acre lots, and with 8 units reserved for, but not built on, the mobile home parcel. (R.R. at 10a–11a; 31a–32a.)

(4) Being advised that no decision on the issues raised in the December 7, 1993 letter could be decided until a preliminary plan was presented to the Board of Supervisors, Property Owner, on January 20, 1994, prepared a preliminary plan, the Steepleview Plan, reflecting the December 7, 1993 letter, and submitted it to the Board of Supervisors on February 1, 1994. (R.R. at 12a.) The Steepleview Plan was reviewed by the Township Engineer, Yerkes, who issued a February 9, 1994 review letter (Yerkes Review Letter). (R.R. at 33a–40a.) The Steepleview Plan was also reviewed by the Township Planning Commission at two Commission meetings, and the Commission issued a review summary dated March 28, 1994. (R.R. at 41a–46a.) Finally, the Chester County Planning Commission reviewed the January 20, 1994 Steepleview Plan and issued a June 1, 1994 review letter. (R.R. at 47a–51a.) When the Board of Supervisors considered the Steepleview Plan at its April 5, 1994 meeting, it directed Property Owner to seek relief from the Township Zoning Hearing Board (ZHB) in the form of a variance. (R.R. at 13a; 55a.)

(5) Property Owner applied for a special exception and/or variance with the ZHB. Claiming that it was entitled to relief as a permitted expansion of a lawful non-conforming *use,* Property Owner sought permission to develop the Steepleview Parcel in accordance with the Steepleview Plan. (R.R. at 13a–14a.) On September 28, 1994, the ZHB denied Property Owner's request, concluding that, while the mobile home *lot is non-conforming,* the *use is a conforming use* because mobile homes are permitted in an R3 District in a PRD. The ZHB further found that approval of the Steepleview Plan would expand the existing *conforming use* on a *nonconforming lot* by reducing the area for mobile homes from 23.7 to 14.9 acres. The ZHB then determined that the Township Zoning Ordinance does not provide for the expansion of a conforming use on a nonconforming lot and denied both the special exception and the variance. (R.R. at 14a–15a; 57a–68a.) Property Owner did not appeal.

(6) On October 4, 1994, Property Owner attended a meeting of the Board of Supervisors and requested that the Board consider an amendment to the January 20, 1994 Steepleview Plan to join a portion of the Troop Hill Parcel in order to satisfy the 35 acre minimum for a PRD.

The Board of Supervisors recommended that Property Owner prepare plans and review those plans with the Township Planning Commission to determine whether the Steepleview and Troop Hill Parcels were, in fact, contiguous. (R.R. at 72a.) Property Owner did so and presented the plan to the Township Planning Commission at its October 18, 1994 meeting; although a motion was made that the parcels are not contiguous, the motion failed for want of a second. (R.R. at 75a.) From November 1, 1994 through mid-November 1994, Property Owner's counsel and the Township Solicitor exchanged letters debating whether the Steepleview and Troop Hill Parcels are contiguous, each setting out their views on the matter. (R.R. at 16a–17a; 77a–83a.)

(7) At the November 1, 1994 Board of Supervisors' meeting, Property Owner filed a preliminary plan (Troop Hill Plan), dated September 30, 1994, which proposed dividing the Troop Hill Parcel into five single-family detached dwelling lots, and stating that, *if* the Steepleview and Troop Hill Parcels are deemed to be contiguous, then two of the proposed lots of the Troop Hill Parcel would be joined to the mobile home lot of the Steepleview Parcel to create a 36.5 acre parcel of land for the 29 mobile home sites and two single-family dwellings. (R.R. at 17a.)

(8) At a December 6, 1994 meeting, Property Owner made a presentation to the Board of Supervisors on the "contiguous" issue. The Board of Supervisors considered the Troop Hill Plan and the arguments set forth in the November letters exchanged between the Township Solicitor and Property Owner's counsel. A motion to deny the Steepleview Plan was then passed by the Board of Supervisors and, on December 7, 1994, a letter was sent to Property Owner formally advising it that the Board of Supervisors had voted to deny Property Owner's Application for Preliminary Subdivision Approval. (R.R. at 18a; 84a–85a.)

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508(2).

6. Where, as here, the trial court does not take additional evidence, our scope of review in an appeal from the denial of a subdivision application is limited to determining whether the governing body, in this case the Board of Supervisors, abused its discretion or committed an error of law. An abuse of discretion exists if the Board of Supervisors' findings are not supported by substantial competent evidence. *Rouse/Cham-*

sors abused its discretion and/or committed an error of law by determining that the Steepleview and Troop Hill Parcels are not contiguous and denying Property Owner's Application on that basis.[7] Property Owner also contends ·that the December 7, 1994 Denial Letter fails to satisfy the requirements of section 508(2) of the MPC and/or fails to otherwise provide legally sufficient and proper bases for denial of Property Owner's Application, thereby entitling Property Owner to deemed approval of its Application pursuant to section 508(3) of the MPC, 53 P.S. § 10508(3). On the other hand, the Board of Supervisors asserts that the question of whether the two parcels are contiguous is not even before this court because Property Owner never applied for a PRD.[8] Moreover, the Board of Supervisors asserts that the Denial Letter complies fully with section 508(2) of the MPC. However, after careful review of the record and the relevant case law, we conclude that the Denial Letter fails to satisfy section 508(2)·requirements, and, on that basis, we reverse.

■ Section 508(2) of the MPC provides that, with respect to a preliminary or final land development application:

> When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the

provisions of the statute or ordinance relied upon.

53 P.S. § 10508(2). It is well-settled that this provision is mandatory, and enumerated defects without citation to the provisions of the statute or ordinance relied upon cannot support a denial of an application. *Rosanelli v. Quakertown Borough Council,* 43 Pa. Cmwlth. 420, 402 A.2d 1115 (1979). Moreover, section 508(3) provides that:

> Failure of the governing body or agency to render a decision and communicate it to the applicant within the time *and in the manner required* herein shall be deemed an approval of the application in terms as presented....

53 P.S. § 10508(3) (emphasis added).

Initially, we note that the Denial Letter itself does not specifically cite any statute or ordinance provision which Property Owner's subdivision plan is said to have violated; indeed, the Denial Letter includes only two citations, sections 201 and 902B of the Township Zoning Ordinance, neither of which set forth any reason sufficient to deny Property Owner's Application.

The inclusion of section 201 cannot serve to notify Property Owner of any reason that the subdivision plan was defective because that section contains no subdivision plan requirements; it only provides the definitions

---

*berlin, Inc. v. Board of Supervisors of Charlestown Township,* 94 Pa.Cmwlth. 413, 504 A.2d 375 (1986).

7. Property Owner recognizes that the Denial Letter never expressly states that the two parcels are not contiguous, and, in fact, Property Owner essentially contends that the Board of Supervisors abused its discretion by failing to make the express finding, requested by Property Owner as part of its Application, that the parcels are contiguous.

8. The Board of Supervisors maintains that this case is a simple one, dealing only with whether the Board of Supervisors acted reasonably in denying Property Owner's Application which, by reducing the mobile home lot's acreage from more than 23 to less than 15 acres, would increase the degree of nonconformity of that lot by fifty percent.

Property Owner, of course, disagrees. Property Owner argues that it has proposed combining

the Steepleview and Troop Hill Parcels in order to satisfy the lot size requirement for the mobile home lot, and, as part of its Application, asked the Board of Supervisors for a determination as to whether these parcels are "contiguous" for the purpose of qualifying as a PRD under section 902B of the Township Zoning Ordinance. Claiming that the Township Zoning Ordinance does not require the filing of a PRD ̇application before such a decision can be rendered, Property Owner asserts that section 902B and the question of whether these parcels are, in fact, contiguous, is relevant to this appeal. Indeed, Property Owner maintains that it would be prohibitively expensive and foolish for it to submit a PRD application until this decision is made. Further, Property Owner reminds us that it was the Township itself which raised the matter of contiguity and that the Board of Supervisors has, in effect, determined the issue adversely to Property Owner in spite of the fact that no PRD application has been filed. However, because we base our decision here on the second issue raised by Property Owner, we need not resolve this dispute.

of terms used in the Township Zoning Ordinance.[9] Moreover, the Denial Letter does not explain the relationship between this cited provision and any plan defects, as required by section 508(2), but merely states that utilization of the cited provision requires denial of the Application. *See Stein v. Easttown Township Board of Supervisors,* 110 Pa.Cmwlth. 293, 532 A.2d 906 (1987) (stating that denial of a preliminary land development plan is not justified based on the board of supervisors' ruling that a plan component was "not acceptable" without explaining why it is unacceptable); *Whiteland Manor Homes v. Borough of Downingtown,* 32 Pa. Cmwlth. 274, 378 A.2d 1311 (1977) (holding that, in order to comply with section 508(2) of the MPC, a decision to reject a subdivision plan must not only cite the statutory authority relied upon but must also specify the defects in a plan and describe the requirements which have not been met).

With regard to section 902B of the Township Zoning Ordinance, the Board of Supervisors once again fails to satisfy the mandate of section 508(2). In citing this provision, the Board of Supervisors does not identify any specific defect in the preliminary subdivision plan; in fact, the Board of Supervisors includes the citation only to inform Property Owner that this particular section does not even apply to the question of subdivision approval. Thus, standing alone, the Denial Letter clearly fails to comply with section 508(2) requirements.

However, the Board of Supervisors attempts to incorporate other documents into the Denial Letter by reference. According to the Board of Supervisors, these documents list dozens of deficiencies in the subdivision plan, each with appropriate reference to a specific ordinance section, thereby ensuring that the Denial Letter fully satisfies the dictates of section 508(2) of the MPC. We cannot agree.

Initially, we note that the Board of Supervisors, citing *Rouse/Chamberlin, Inc. v. Board of Supervisors of Charlestown Township,* 94 Pa.Cmwlth. 413, 504 A.2d 375 (1986), maintains that this court "has held that incorporation by reference satisfies the requirements of § 508(2)." (Board of Supervisors' brief at 12.) This court has never so held. In fact, in *Rouse/Chamberlin,* we stated:

Following a February 1, 1982 hearing, the Board voted to reject the plan for the reasons outlined in the Planning Commission report and for reasons to be set forth in a written letter. The letter, dated February 12, 1982, informed appellant of the formal reasoning behind the rejection. The grounds for rejection were separated into nine delineated areas and each problem was supported by a citation to specific provisions of the Charlestown Township, Pennsylvania, Zoning Ordinance of 1979 ...; the Charlestown Township, Pennsylvania, Subdivision and Land Development Ordinance of 1970 ...; and the Charlestown Township Erosion, Sedimentation and Grading Control Ordinance of 1974....

*Id.* at 376. Thus, contrary to the claim of the Board of Supervisors here, in *Rouse/Chamberlin,* section 508(2) requirements were not met through the incorporation of documents by reference; rather, *the rejection letter itself* set forth the reasons for rejection with citation to specific ordinances and statutes, and so independently satisfied the requirements of section 508(2). Indeed, we noted precisely that when we stated, "the statute is amply satisfied by an oral decision followed by a letter setting forth the reasons for rejection with citation to specific ordinances and statutes." *Id.* at 378, citing *Noll v. Stewart,* 57 Pa.Cmwlth. 559, 427 A.2d 710 (1981).

9. Specifically, the Denial Letter refers to the definitions of "lot" and "lot line." The term "lot" is defined as a "contiguous quantity of land held in single and separate ownership, established by a subdivision or otherwise permitted by law and to be used, developed or built upon as a unit." "Lot line" is defined as a "property boundary line shown on a recorded plan or described in a recorded deed. The lot line for any portion of the lot crossed by any part of a street right-of-way shall be deemed to be the same as the street line, and shall not be the centerline of the street, or any other line within the street right-of-way." (Township Zoning Ordinance § 201, R.R. at 108a–09a.)

Moreover, we have stressed the mandatory nature of section 508(2), stating:

> Where an application is denied, the test is not whether the applicant had actual knowledge of the particular defects in his plan, the requirements which have not been met and the specific sections of the statute or ordinance relied upon but whether this information is contained within the four corners of the written decision itself. ·

*Bensalem Township v. Blank,* 115 Pa. Cmwlth. 281, 539 A.2d 948, 951 (1988). In *Malone v. West Marlborough Township Board of Supervisors,* 145 Pa.Cmwlth. 466, 603 A.2d 708 (1992), we considered whether the rejection of a revised subdivision plan violated section 508(2) requirements where the rejection letter did not restate, but simply incorporated by reference, the objections made in the letter denying the initial preliminary plan. Citing *Blank* as authority, we held that "the mere reference to the reasons for rejecting the preliminary plan was insufficient under the MPC because the 'applicant' for a subdivision plan must have actual notice of the reasons for the rejection within the four corners of the document." *Id.* at 712 n. 6.

Property Owner seizes on this holding from *Malone* to stand for the broad proposition that incorporation by reference cannot be used to satisfy section 508(2) requirements under any circumstances. The Board of Supervisors, however, reasons differently. Noting that, in *Malone,* the court does not say that the referenced letter actually was enclosed along with the subsequent rejection letter, the Board of Supervisors concludes that incorporation by reference does satisfy the requirements of section 508(2) where, as here, the incorporated documents are not only referenced and expressly adopted, but copies of those documents also accompany the Denial Letter itself.

We decline to read *Malone* as broadly as Property Owner suggests. However, without indicating whether, or under what circumstances, incorporation by reference can be used to meet section 508(2) requirements, we must conclude that the Board of Supervisors does not satisfy this statutory mandate under the circumstances presented by this case.

Here, the Denial Letter refers to four different documents which, in turn, list numerous objections to Property Owner's subdivision plan. The Board of Supervisors, however, makes no attempt to identify with any particularity which of the many concerns set forth in these documents form the basis for the Application denial and why. Instead, the Board of Supervisors sweeps together the entire list of objections, indiscriminately labelling them all as reasons to deny the subdivision request without ever citing a single one of these reasons in the Denial Letter itself. Although it may well have valid grounds to deny Property Owner's subdivision plan, the Board of Supervisors' resort to this type of indeterminate approach does not in our view satisfy the specificity requirements of section 508(2) of the MPC, particularly where so many of the objections seem wanting or otherwise fail to justify denial at this preliminary stage.[10] Thus, we cannot

---

10. The Denial Letter refers to four separate documents: 1) the Township Planning Commission's recommendations; 2) the ZHB opinion; 3) Robert Johnson's letter; and 4) the Yerkes review letter. Considering each of these, we note first that the Township Planning Commission recommendations of March 28, 1994 cite Township Zoning Ordinance sections indicating possibilities for development of the Steepleview Parcel that would be uniform to the Township Zoning Ordinance, but cite no provisions supporting denial of the Property Owner's Application. (R.R. at 89a–90a.) Second, the decision of the ZHB, although referenced, was not attached to the Denial Letter. Third, the Robert Johnson letter deals with sections 201 and 902B of the Township Zoning Ordinance which, as previously stat-

ed, do not constitute valid reasons for plan denial. (R.R. at 86a–88a.) Finally, we note that the Yerkes review letter includes 42 objections to Property Owner's Application. However, of these, some comments fail to cite any statutory or ordinance provisions and, thus, cannot form a proper basis for the Application denial, *Stein v. Easttown Township Board of Supervisors,* 110 Pa.Cmwlth. 293, 532 A.2d 906 (1987), (*see* paras. 32–42); some comments contain incomplete, incorrect or nonexistent cites, (*see* paras. 2, 5, 8, 9); some comments, while citing specific provisions of the Township Zoning Ordinance or Township Subdivision and Land Development Ordinance, do not state that the plan, *at this point,* is defective for not having met those requirements or in what manner the plan has

conclude that the written decision here offers Property Owner the meaningful notice that section 508(2) was designed to provide.

Because the Board of Supervisors failed to comply with section 508(2) of the MPC in disapproving Property Owner's Application, the preliminary subdivision plan must be deemed approved pursuant to section 508(3) of the MPC. Accordingly, we reverse the decision of the Board of Supervisors to deny approval of Property Owner's preliminary subdivision plan, and we remand to the Board of Supervisors with directions to approve the Application.[11]

### ORDER

AND NOW, this 12th day of May, 1997, the order of the Court of Common Pleas of Chester County, dated May 22, 1996, is hereby reversed. The case is remanded to the Board of Supervisors of Warwick Township with directions to approve the preliminary subdivision plan submitted by Warwick Land Development, Inc. in accordance with this opinion.

Jurisdiction relinquished.

LEADBETTER, J., dissents.

failed to meet those requirements, (*see* paras. 1, 4, 6, 7, 10, 15, 16(a), 16(i), 16(j), 18–23, 24(b-e)); and some comments appear only to point out the existence of minor deficiencies, easily correctable prior to final plan approval, (see paras. 4, 7, 11, 12, 13, 14, 17–20, 26–31). Finally, we note that the Yerkes letter does not recommend outright denial of the Application, but states that approval is not recommended *at this time*, directing the Township Solicitor to review the plan with an eye toward possible future approval. (Appellant's brief, Appendix 1 at 3–10.)

**11.** In reaching this result, we do not answer the question of whether the Steepleview and Troop Hill Parcels are contiguous for purposes of a PRD. We note, however, that by virtue of the deemed approval here, all PRD requirements necessarily are considered satisfied.