# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres One, LLC and Half Moon   :
Acres, LLC,   :
                    Appellants   :
  :
           v.   :    No. 336 C.D. 2020
  :    Argued:  December 8, 2020
Halfmoon Township, Centre County,   :
Pennsylvania   :


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE P. KEVIN BROBSON,** Judge[1]
               **HONORABLE CHRISTINE FIZZANO CANNON,** Judge

**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED:  April 21, 2021**

      Green Acres One, LLC and Half Moon Acres, LLC (collectively, Landowners) appeal from a February 25, 2020 Order of the Court of Common Pleas of Centre County (common pleas), which denied Landowners' appeal from a decision of Halfmoon Township, Centre County, Pennsylvania (Township), denying Landowners' Application for Preliminary Subdivision Plan (Application) and Sewage Facilities Planning Module (Sewer Planning Module).  Landowners contend that common pleas erred by:  (1) finding the Township's denial complies with the applicable law governing municipal decisions; (2) not finding the Township acted in bad faith in summarily denying the Application and Sewer Planning Module just nine days after submission; (3) finding the Township could deny the Application and

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

Sewer Planning Module based upon an ordinance that merely authorized the Township to execute an agreement to amend its land use ordinances but did not actually amend said ordinances; and (4) upholding the denial because Landowners had a statutory right under the Pennsylvania Sewage Facilities Act[2] to seek Department of Environmental Protection (DEP) approval to revise the applicable sewage facilities plan to authorize service to the proposed development with a community treatment plant. We reverse common pleas' Order because, although the email denial satisfies the statutory requirements to constitute a municipal denial, the ordinance upon which the email denial was based did not substantively amend the Township's land use ordinances, as the Township contends. Therefore, we remand this matter for further remand to the Township, which is directed to consider the Application and Sewer Planning Module in accordance with the Township's Zoning Ordinance[3] and Subdivision and Land Development Ordinance[4] (SALDO) as they existed at the time of the Application.

## I.    BACKGROUND

Landowners own approximately 198 acres of land north of State Route 550 in the Township upon which they propose to build 70 single-family detached dwellings that would be served by a community sewage treatment plant that Landowners also propose to construct.[5] (Common pleas' Opinion (Op.), Findings of Fact (FOF) ¶¶ 1,

---

[2] Act of January 24, 1966, P.L. 1535, No. 537, *as amended*, 35 P.S. §§ 750.1-750.20a.

[3] Zoning Ordinance of Halfmoon Township, Centre County, Pa. (Sept. 11, 1972), *as amended*.

[4] Subdivision and Land Development Ordinance of Halfmoon Township, Centre County, Pa. (Oct. 14, 1985), *as amended*.

[5] Landowners also own an additional 127 acres in neighboring Patton Township, which will be developed into Greenmoore Village. A planning module for that development was **(Footnote continued on next page…)**

12-13.) The property is located in an Agricultural Zoning District where the Township's Zoning Ordinance permits community sewage treatment plants as a conditional use. (Zoning Ordinance, Section 255-13.C(3), Reproduced Record (R.R.) at 600a.) The Township's SALDO likewise permits community septic and sewage systems provided the same are approved by the Board of Supervisors, DEP, and the sewage enforcement officer. (SALDO, Section 215-19.A(4), R.R. at 804a.)

The Centre Region Council of Governments (CRCOG), of which the Township is a member,[6] updated its multimunicipal comprehensive plan, the Centre Region Comprehensive Plan, in November 2013. (FOF ¶¶ 2-3.) Therein is a Future Land Use Map identifying a Regional Growth Boundary and Sewer Service Area. (*Id.* ¶ 4.) "The Regional Growth Boundary delineates a region where it was determined growth should occur." (*Id.* ¶ 5.) The Sewer Service Area was established by the Centre Region Act 537 Sewage Facilities Plan (Act 537 Plan) and identifies the area serviced by public sewer. (*Id.* ¶¶ 4, 8.) The boundaries of the Sewer Service Area coincide with the Regional Growth Boundary. (*Id.* ¶ 8.) The Township, and hence Landowners' property, is entirely located outside of this area. (*Id.* ¶ 7.) The rural areas outside of the Regional Growth Boundary are largely devoted to farming and forestry, and while large-lot, single-family homes are permitted, they cannot require the use of public sewer services. (*Id.* ¶ 6.) According to Section IX of the Centre Region Growth Boundary and Sewer Service Area Implementation Agreement (Implementation Agreement):

> The [Act 537 Plan] identifies on-lot sewage disposal systems as the only method for wastewater treatment outside of the Regional Growth

previously submitted and approved by Patton Township. If approved by the Township, both developments will utilize the proposed treatment plant. (Reproduced Record (R.R.) at 99a.)

[6] Other member municipalities include College Township, Ferguson Township, Harris Township, Patton Township, and State College Borough.

Boundary and Sewer Service Area. If public sewer service is requested, the University Area Joint Authority [(UAJA)] has been identified as the provider for public services in the Centre Region.

(Implementation Agreement, Section IX, R.R. at 31a.)

Section IX of the Implementation Agreement prohibits alternative public wastewater treatment systems outside of the Regional Growth Boundary and Sewer Service Area. *(Id.)* The Implementation Agreement defines "[a]lternative [p]ublic [w]astewater [t]reatment" as "any process designed to produce an effluent of higher quality than normally achieved through primary and secondary treatment processes and [which] does not utilize soils as the primary method for remediation." *(Id.,* Section II, R.R. at 21a.) Section IX concludes by stating that "by enacting this [Implementation] Agreement, the Municipalities agree to incorporate the requirements described above into their municipal sewage management ordinances." *(Id.,* Section IX, R.R. at 31a.)

On December 17, 2013, the Township enacted Ordinance 2013-20 wherein the Township Board of Supervisors indicated "the Township . . . wishe[d] to adopt . . . [the] Implementation Agreement" and "authorize[d] the Chair and the Secretary to execute said [Implementation] Agreement on behalf of the Board of Supervisors of the Township . . . ." (Ordinance 2013-20, R.R. at 19a.) Ordinance 2013-20 included what is commonly referred to as a repealer provision, which provided: "All existing agreements, resolutions, and ordinances which are contrary to the provisions of this Ordinance are hereby repealed to the extent necessary to give this Ordinance full force and effect." *(Id.)* The Township's Zoning Ordinance and SALDO predate the Implementation Plan and Ordinance 2013-20. There is no evidence either was amended to reflect the Implementation Agreement and its requirements.

Consistent with their proposed development, Landowners submitted their Application on August 8, 2018, and their Sewer Planning Module on August 9, 2018,[7] requesting that the Township amend the Act 537 Plan to allow the development to be served by Landowners' proposed community plant. (FOF ¶¶ 11, 14.) Landowners did not request that the Regional Growth Boundary be expanded to encompass the property or request an expansion of the Act 537 Plan so the proposed development could be serviced by UAJA. (*Id.* ¶ 15.)

On August 17, 2018, the Township Manager sent Landowners' representative an email, denying the Application and Sewer Facilities Planning Module. The email states:

> Halfmoon Acres submitted its Application . . . for approximately 70 lots North of [State Route] 550. [The A]pplication notes these dwelling units will be served by an alternative wastewater system. To this end, [Landowners] submitted a Sewer Planning Module [] a few days later to the Township for approval. The Township hereby denies both the [A]pplication . . . and Sewer Planning Module []for the reasons stated below.
>
> Staff stated to both of you at the pre-application meeting a week to 10 days ago, alternative wastewater systems are not allowed outside the Regional Growth Boundary. We referred you to the . . . Implement[ation] Agreement and Township Ordinance 2013-20 dated December 17, 2013. Therefore, we stated, if an application for subdivision was submitted to the Township for any lots to be served by an alternative wastewater system as defined in both the Ordinance and Agreement[,] staff would, under current law, have to summarily deny same.
>
> In further support of denying the application as submitted, I spoke to Dan Thetford at DEP who would be reviewing and approving any Sewer Planning Module[s] [] for the Township. He state[d] any

---

[7] Landowners originally submitted their Sewage Facilities Planning Module in September 2010, supplemented it in November 2010, updated it in February 2011, and resubmitted it in July 2011 before updating and resubmitting it to the Township in August 2018. (R.R. at 80a.)

5

possible DEP approval is always contingent upon any system being consistent with Township Ordinances or Regional policies. He also state[d] the Township has sole power to dictate who it wishes to own and operate any wastewater system within its boundaries. The Township wants any wastewater system within the Township to be owned and operated by a public entity. This means UAJA[,] and Cory [Miller] at UAJA state[d] any system UAJA will own and operate will have to be built to UAJA standards and must be approved by the region.

[Jim] May's letter lays out two different options for [Landowners] to pursue if [they] decide[] to submit a new application.

(R.R. at 17a.)

The letter referenced in the final paragraph of the email refers to an August 16, 2018 letter from the Director of Centre Regional Planning Agency (CRPA), to the Township Manager (May's letter). Therein, May stated he was "writing on behalf of the CRPA to request that [the] Township consider rejecting the [A]pplication" because "[t]he project proposes an alternative wastewater treatment system that is prohibited by the . . . Implementation Agreement." (*Id.* at 399a.) May's letter specifically cited Section IX.3 of the Implementation Agreement for this proposition. (*Id.*) May's letter concludes by stating:

[Landowners] should consider the two following options for resubmittal if the Township chooses to reject the [A]pplication:

1.   Redesign the subdivision to accommodate individual on-lot or community on-lot septic systems and resubmit the preliminary subdivision plan.
2.   Request an expansion of the Regional Growth Boundary [] and Sewer Service Area [] so that [] UAJA could serve the property. If this is the case, the Township should not review the subdivision unless [Landowners] first come[] to the Township to request an expansion of the [Regional Growth Boundary and Sewer Service Area], and the request is authorized by the Township Board of Supervisors and ultimately approved by the [CR]COG General Forum.

6

(*Id.* at 399a-400a.) Listed as being copied on the letter were CRCOG's executive director, UAJA's executive director, Patton Township's manager, two of CRPA's senior planners, the Township's zoning officer, the Township's engineer, and someone from DEP's Clean Water Program. (*Id.* at 400a.) It is not clear whether May's letter was attached to the Township Manager's email.

On September 17, 2018, Landowners filed their notice of appeal to common pleas, raising the same four issues raised before this Court.[8] Without taking additional evidence, common pleas issued its Order on February 25, 2020, denying Landowners' appeal. In an accompanying opinion, common pleas explained its reasoning as follows. With regard to the sufficiency of the Township's decision, common pleas stated the email from the Township Manager explained the Application was being denied because the community treatment plant would violate the Implementation Agreement and Ordinance 2013-20. (Common pleas' Op. at 7.) In addition, common pleas found the email incorporated by reference May's letter providing two options for Landowners to resubmit the Application. (*Id.* at 7-8.) Thus, common pleas found the email denial satisfied the statutory requirements for a municipal decision and, therefore, no deemed approval occurred. (*Id.* at 8.)

Common pleas likewise was not persuaded by Landowners' argument that the Township acted in bad faith. Common pleas acknowledged that the Application was denied within nine days of submission but explained that the denial occurred after a pre-application meeting at which Township staff advised Landowners why the

---

[8] Before common pleas, the Township challenged the timeliness of Landowners' appeal on the basis that it was filed 31 days after the email decision instead of within 30 days. Common pleas deemed the appeal timely on the basis that 30 days after August 17, 2018, would have been Sunday, September 16, 2018, giving Landowners until Monday, September 17, 2018, to file their appeal, which they did. (Common pleas' Op. at 7.) The Township does not challenge that determination before this Court.

7

Application would be denied. (*Id.* at 8-9.) As a result, common pleas found that the time between submission and denial was not indicative of bad faith. (*Id.* at 9.) Common pleas further found that the Township provided Landowners with two options regarding how to proceed. (*Id.*)

As to Landowners' third argument, common pleas found Ordinance 2013-20 adopted the Implementation Agreement and repealed all ordinances that were contrary thereto. (*Id.*) Thus, "the [Implementation Agreement] and the Regional Growth Boundary have the legal effect of an ordinance," to which Landowners are bound, and the Township's denial of the Application on the basis the Application was contrary to a Township ordinance was not error. (*Id.* at 9-10.)

Finally, common pleas found the Township did not deny Landowners the right to submit a private request to DEP to revise the Act 537 Plan as provided in the Pennsylvania Sewage Facilities Act. Common pleas stated Landowners "have not provided [common pleas] with evidence of a prior written demand to the Township, and the Township's subsequent written refusal to implement or revise the [Act] 537 Plan," both of which are required under DEP's regulations. (*Id.* at 10.) In addition, common pleas found Landowners were provided two options for proceeding, to which they did not avail themselves. (*Id.*)

Following Landowners' appeal of common pleas' Order to this Court, common pleas issued an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (1925(a) Op.), wherein it further explained its reasoning related to the fourth issue. Common pleas explained that even if it accepted Landowners' argument that the Application and email denial constituted a request and denial to amend the Act 537 Plan, Landowners' fourth "argument lacks merit." (1925(a) Op. at 2.) According to common pleas,

8

Landowners' "right to seek DEP approval did not mean the Township was required to approve" Landowners' Application. (*Id.* at 2-3.) Common pleas stated that DEP approval would permit Landowners to proceed with their plan "notwithstanding the lack of approval from the Township and notwithstanding any agreements of the Centre Region [m]unicipalities." (*Id.* at 3.) Common pleas explained that nothing in DEP's regulations "precluded [Landowners'] right to seek DEP approval" when the request is denied by the Township. (*Id.*) Instead, common pleas found that the regulations "actually require[] a denial by the Township before [Landowners] can make the request." (*Id.*) Common pleas further found that "[t]he Township did not ignore [Landowners'] right to seek DEP approval, and actually consulted with DEP, which informed the Township it would deny [Landowners'] Plan as well." (*Id.*) Lastly, common pleas reiterated that the Township provided Landowners with two options, neither of which Landowners pursued. (*Id.* at 3-4.)

## II. PARTIES' ARGUMENTS

On appeal,[9] Landowners argue that common pleas' Order should be reversed for four reasons. First, Landowners claim the email from the Township Manager does not comply with the statutory requirements for a municipal decision and, as a result, Landowners are entitled to a deemed approval of their Application and Sewer Planning Module. Landowners assert that both Section 508(2) of the Pennsylvania Municipalities Planning Code (MPC)[10] and Section 215-7.F(3) of the Township's SALDO require a decision to describe the defects with an application, explain which

---

[9] "In a land use appeal, where [common pleas] has not taken any additional evidence, this Court's scope of review is limited to a determination of whether the governing body has committed an error of law or abused its discretion." *Koller v. Weisenberg Township*, 871 A.2d 286, 289 n.2 (Pa. Cmwlth. 2005).

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508(2).

9

requirements are not met, and cite specific provisions of an ordinance that are at issue. Landowners argue the only ordinance referenced in the Township Manager's email is Ordinance 2013-20, which merely authorized the Township to adopt the Implementation Agreement. Landowners dispute that May's letter was incorporated by reference into the email, as common pleas found. Landowners further argue May is not a Township official. Assuming May's letter was incorporated into the Township Manager's email, Landowners argue it only contains a recommendation and does not provide a basis for the denial.

Second, Landowners argue the Township had a duty to act in good faith in reviewing Landowners' plans, which the Township did not do. As evidence, Landowners argue the Application and Sewer Planning Module were denied just nine days after submission and the email denial did not provide Landowners with an opportunity to respond to modify the plan. To the extent common pleas found there was no bad faith because May's letter provided two options for resubmitting the Application, Landowners argue neither of those options are feasible as on-lot systems would be too expensive and approval by the Township and/or CRCOG to amend the Act 537 Plan was unlikely.

Third, Landowners argue the Township never amended its ordinances in accordance with the Implementation Agreement, and, therefore, the ordinances that were still on the books allowed off-lot systems and alternative wastewater treatment systems, such as community sewer treatment plants. Contrary to the Township's assertion, Landowners argue that Ordinance 2013-20 does not actually impose any land use requirements; it merely authorizes Township officials to sign the Implementation Agreement. For similar reasons, Landowners assert the repealer provision in Ordinance 2013-20 does not save the Township. According to

10

Landowners, at best, the repealer provision only repeals any ordinances that would prevent the Township from signing the Implementation Agreement, not any substantive land use ordinances themselves.

Fourth and finally, Landowners argue it was error to deny the Application and Sewer Planning Module because, under the Pennsylvania Sewage Facilities Act, Landowners had the right to privately request that DEP revise the Act 537 Plan. While common pleas found Landowners did not complete the prerequisites for such relief, Landowners contend that they did comply with DEP's regulations requiring a request to a municipality, here, Landowners' Application, and a denial by the Township, here, the Township Manager's email. Although common pleas, in its Rule 1925(a) Opinion, found nothing prevented Landowners from still submitting their request to DEP, Landowners argue DEP cannot require the Township to reverse the denial. According to Landowners, the Township should have approved the Application contingent upon Landowners receiving DEP approval. To the extent common pleas found, based on a statement in the email denial, that the request to DEP would have been futile, Landowners respond that this misses the point that Landowners' right to make the request cannot be circumvented.

The Township argues in response as follows. The email from the Township Manager sufficiently sets forth the reasons for denial, cites Ordinance 2013-20 as a basis, incorporates by reference May's letter, which cites the Implementation Agreement, and provides Landowners with two options. Therefore, there was no deemed approval, and the Township acted in good faith. The Township argues Landowners cite no authority for the proposition that the Township cannot incorporate by reference a letter from a third party. The Township also argues that it acted in good faith in reviewing the Application. The Township also points out

11

that Landowners were advised at a pre-application meeting of the deficiencies in their plan. The Township further contends that Ordinance 2013-20 adopted the Implementation Agreement, which requires individual or community on-lot sewer systems, and there is no requirement that an ordinance must be part of a SALDO or zoning ordinance if it relates to land use. For support, it provides as examples ordinances related to driveways and stormwater management. The Township also argues Ordinance 2013-20 contained a repealer provision, which would have repealed any provisions from other ordinances that conflicted with Ordinance 2013-20 and the Implementation Agreement it adopted. Finally, the Township argues Landowners can still submit a private request to DEP for amendment of the Act 537 Plan. In fact, the Township points out, this was one of the two options provided for in May's letter. The Township asserts its denial actually opened the avenue for Landowners to pursue that DEP approval because one of the prerequisites for such relief is a denial by the municipality.

In their reply brief, Landowners disagree the email constituted a valid denial. According to Landowners, the governing body of the Township, its Board of Supervisors, did not even act on the Application; rather, its Township Manager summarily denied it. Landowners also reiterate that the email did not incorporate May's letter and the options provided therein were not really options. The first alternative essentially amounted to compliance, Landowners argue. The second option was to request expansion of the Regional Growth Boundary, which would have required the Township, which denied the Application, to authorize the request to CRCOG's General Forum. Landowners also reassert their argument that Ordinance 2013-20 merely authorized Township officials to sign the Implementation Agreement and nothing more and that the repealer provision did not

12

affect the ordinances which allow the alternative sewer system that Landowners propose. Landowners argue that the Implementation Agreement requires the member municipalities to amend their own ordinances, which the Township did not do. Landowners also argue that they should not be left to guess what, if anything, has been repealed. Finally, Landowners argue that the Township misses Landowners' point about the Act 537 Plan. Landowners contend they should have been given the opportunity to make the request to DEP and the Township should have approved the Application with the condition that Landowners receive such approval.

## III. DISCUSSION

Landowners first argue that the email denying the Application and Sewer Planning Module did not comply with the statutory requirements for a municipal decision. Section 508(2) of the MPC provides that a denial of an application "shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon." 53 P.S. § 10508(2). "It is well-settled that this provision is mandatory." *Warwick Land Dev., Inc. v. Bd. of Supervisors of Warwick Twp., Chester Cnty.*, 695 A.2d 914, 918 (Pa. Cmwlth. 1997). Section 215-7.F(3) of the Township's SALDO also specifies the content of a decision by the Township: "If the plan is not approved, the decision shall specify the defects found in the plan and describe the requirements which have not been met and shall, in each case, cite the provisions of this chapter from which such defects or requirements originate." (SALDO, § 215-7.F(3), R.R. at 776a.) The failure to comply with these requirements results in a deemed approval of the application. 53 P.S. § 10508(3).

13

The Pennsylvania Supreme Court has explained that "the measure of the adequacy of a decision depends on whether it is sufficient to permit the applicant to understand the specific nature of the deficiency identified, so as to permit the applicant to take whatever further action it deems necessary or appropriate." *Kassouf v. Township of Scott*, 883 A.2d 463, 474 (Pa. 2005). Importantly, the courts have held that an applicant's actual knowledge of the deficiencies of the plan does not excuse noncompliance with Section 508(2). *Lease v. Hamilton Township*, 885 A.2d 684, 688 (Pa. Cmwlth. 2005); *Dobrinoff v. Bd. of Supervisors of Franklin Twp.*, 582 A.2d 1156, 1160 (Pa. Cmwlth. 1990); *Bensalem Township v. Blank*, 539 A.2d 918, 951 (Pa. Cmwlth. 1988). Rather, the test is "whether this information is contained within the four corners of the written decision itself." *Bensalem Township*, 539 A.2d at 951.

That is not to say that a municipality cannot incorporate by reference another document into its decision. In *Kassouf*, our Supreme Court addressed this exact issue. The Supreme Court reasoned that

> [i]f the reasons for a denial consist of defects which have already been adequately set forth in an engineer's report, or other documentation provided to the developer and available to the municipal authority in its decision-making process, it would be a pointless evaluation of form over substance to require the authority to essentially cut-and-paste those conclusions into its own decision letter.

*Kassouf*, 883 A.2d at 472.

The Supreme Court, however, cautioned that while "there is no absolute impediment to incorporation by reference, [that] does not mean that any and all references to supporting documentation will provide, as a substantive matter, an adequate articulation of the reasons for a denial for purposes of Section 508(2)." *Id.* There, the Supreme Court stated the municipality's "letter d[id] not refer to a specific

report, identifiable by title or date or subject matter," did not include the words "incorporate by reference," and did not attach the subject document to its letter. *Id.* "Instead, the decision letter merely and variously refers to the township engineer's 'comments,' 'requests' or 'requirements,' which [the landowner] failed to satisfy, usually without any reference to the source or date of the comments." *Id.* The Supreme Court further reasoned

> the subdivision applicant should not be left to guess at whether the township was truly relying upon an external document in lieu of its own Section 508 statement. Nor should the applicant be left to guess as to which of multiple documents is the one that would serve as the "incorporated" basis for the decision. If a municipal authority indeed intends for an external document to serve as the substantive explanation of the basis for its decision, it should make that point explicitly in the decision letter, and not ask the applicant, and the court system, to infer the point. Such a plain statement is a very simple task; and because the township commissioners did not make clear that such was their intention here, we must reject appellee's incorporation by reference argument.

*Id.* at 472-73. This Court has echoed that sentiment, holding "from a practical standpoint, incorporation by reference and attachment of such documentation is not in any way burdensome to the governing body and serves to protect it from claims that the developer did not receive a list of a plan's deficiencies." *Lease*, 885 A.2d at 690.

Our Court has, on a number of occasions, reviewed the sufficiency of an alleged decision letter. For instance, in *Advantage Development, Inc. v. Board of Supervisors of Jackson Township*, 743 A.2d 1008 (Pa. Cmwlth. 2000), we held that a decision that incorporated by reference a 16-page engineer's report satisfied the requirements of Section 508(2). However, we found a township's decision did not comport with Section 508(2) in *Warwick Land Development* where "we note[d] that

15

the [d]enial [l]etter itself d[id] not specifically cite any statute or ordinance provision which [the p]roperty [o]wner's subdivision plan [wa]s said to have violated." 695 A.2d at 918. The only citations therein were to two sections of the zoning ordinance, which did not "set forth any reason sufficient" to justify denial of the application. *Id.* Moreover, we found the township's attempt to incorporate other documents into its decision was unsuccessful. We stated:

> [T]he [d]enial [l]etter refers to four different documents which, in turn, list numerous objections to [the p]roperty [o]wner's subdivision plan. The [b]oard of [s]upervisors, however, makes no attempt to identify with any particularity which of the many concerns set forth in these documents form the basis for the [a]pplication denial and why. Instead, the [b]oard of [s]upervisors sweeps together the entire list of objections, indiscriminately labelling them all as reasons to deny the subdivision request without ever citing a single one of these reasons in the [d]enial [l]etter itself. Although it may well have valid grounds to deny [the p]roperty [o]wner's subdivision plan, the [b]oard of [s]upervisors' resort to this type of indeterminate approach does not in our view satisfy the specificity requirements of [S]ection 508(2) of the MPC, particularly where so many of the objections seem wanting or otherwise fail to justify denial at this preliminary stage.

*Id.* at 920. Accordingly, we concluded the denial letter did not provide the property owner with "the meaningful notice that [S]ection 508(2) was designed to provide." *Id.* at 920-21.

Here, the email appears to "specify the defects found in the [A]pplication and describe the requirements which have not been met," leaving only the question of whether the email denial "cite[s] to the provisions of the statute or ordinance relied upon." 53 P.S. § 10508(2). Landowners argue the email denial does not, as it only generally references Ordinance 2013-20 and the Implementation Agreement. The Township contends that Landowners knew of the deficiencies with the Application based upon a pre-application meeting with Landowners and that the email denial

16

incorporates May's letter, which specifically identifies the relevant sections of Ordinance 2013-20 and the Implementation Agreement.

As for the Township's first argument, it is well-settled that an applicant's actual knowledge of a plan's deficiencies does not excuse a municipality from complying with Section 508(2) of the MPC and, here, the SALDO, which mirrors the MPC's language. *Lease*, 885 A.2d at 688; *Dobrinoff*, 582 A.2d at 1160; *Bensalem Township*, 539 A.2d at 951. We evaluate the sufficiency of a municipality's decision based upon what "information is contained within the four corners of the written decision itself," *Bensalem Township*, 539 A.2d at 951, unless the purported decision incorporates other documents by reference, in which case, we may consider those other documents, *Kassouf*, 883 A.2d at 472.

That brings us to the Township's second argument related to May's letter. The email denial concludes by stating that "May's letter lays out two different options for [Landowners] to pursue if [they] decide[] to submit a new application." (R.R. at 17a.) The Township argues, and common pleas found, this was sufficient to incorporate May's letter into the email denial. However, our Supreme Court has held that "[i]f a municipal authority indeed intends for an external document to serve as the substantive explanation of the basis for its decision, it should make that point **explicitly** in the decision letter, and not ask the applicant, and the court system, to infer the point." *Kassouf*, 883 A.2d at 472 (emphasis added). "[A]ny and all references to supporting documentation" does not mean the documentation has been properly incorporated by reference, such that it can provide a basis for concluding the requirements of Section 508(2) are satisfied. *Id.* Here, the passing reference to May's letter does not suffice. It is not clear whether May's letter was attached to the email denial or that Landowners had been provided a copy of same, as May's letter

17

was not addressed to Landowners and Landowners were not listed as being copied on same. Incorporating a document by reference "is a very simple task," *id.* at 473, which we cannot conclude was done here.[11]

Thus, we limit our review to "the four corners of the written decision itself." *Bensalem Township*, 539 A.2d at 951. As stated, the email denial references Ordinance 2013-20 and the Implementation Agreement. Ordinance 2013-20 is a simple one-page ordinance to which there was no specific provision that needed to be cited. Although the Implementation Agreement is longer and contains multiple sections, it is apparent from a review of the Implementation Agreement and the email that Section IX requiring on-lot systems and prohibiting alternative public wastewater treatment systems is the basis for the Township's decision. Therefore, the purpose behind Section 508(2) of the MPC appears to be satisfied and no deemed approval occurred.

That brings us to the effect of Ordinance 2013-20. When interpreting an ordinance, courts are guided by principles of statutory construction. *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. . . . In pursuing that end, we are mindful that an ordinance's plain language generally provides the best indication of legislative intent. . . . Thus, statutory construction begins with examination of the text itself.

*Id.* (internal citations omitted).

---

[11] Even if the email denial did successfully incorporate by reference May's letter, at best, it incorporated the two options May provided for resubmission. (*See* R.R. at 17a ("May's letter lays out two different options for [Landowners] to pursue if [they] decide[] to submit a new application.").) It makes no reference to the remainder of May's letter such that one could conclude that the Township intended to incorporate by reference the entirety of May's letter.

Ordinance 2013-20 plainly states that it "authorize[d] the Chair and the Secretary to execute [the Implementation] Agreement on behalf of the Board of Supervisors of the Township. . . ." (Ordinance 2013-20, R.R. at 19a.) Pursuant to Ordinance 2013-20, the Township did adopt the Implementation Agreement; however, there is no evidence the Township incorporated the requirements of the Implementation Agreement into its ordinances as required by Section IX of the Implementation Agreement. Section IX of the Implementation Agreement provides that "by enacting th[e Implementation Agreement], the [member m]unicipalities agree to incorporate the requirements described [therein] into their municipal sewage management ordinances." (R.R. at 31a.)

The Township appears to argue that Ordinance 2013-20 was sufficient to accomplish this because it contained a general repealer provision. However, the repealer provision does not provide that it is **incorporating** the requirements of the Implementation Agreement into the Township's ordinances, as Section IX required; it only discusses **repealing** "[a]ll existing agreements, resolutions, and ordinances which are contrary to the provisions of **this Ordinance**."[12] (emphasis added). As

_____

[12] Had the repealer provision stated it was repealing "all existing agreements, resolutions, and ordinances which are contrary to the provisions of the **Implementation Agreement**," instead of "contrary to the provisions of **this Ordinance**," (R.R. at 19a (emphasis added)), we would agree with the Township that it would have repealed the ordinances on its books, which were contrary to the Implementation Agreement. While the Township may have intended for Ordinance 2013-20 to accomplish this, its language did not do so. *THW Grp., LLC*, 86 A.3d at 336. A review of the existing ordinances in the record provides further support for this conclusion. The Zoning Ordinance and SALDO contain references to additions and amendments throughout, including some that occurred after Ordinance 2013-20 was enacted. (*See, e.g.*, R.R. at 827a-28a (reflecting amendments made in 2017).) The Zoning Ordinance and SALDO also contain "Editor's Note[s]," which show that some provisions were repealed and/or deleted by subsequent ordinances. (*See, e.g.*, R.R. at 574a, 580a, 582a, 598a, 608a, 610a, 617a-19a, 622a, 626a, 653a, 683a, 693a-94a, 701a, 706a, 772a, 792a-93a, 797a, 804a, 819a, 833a-36a, 838a, 840a, 843a.) Notably, **neither** Section 255-13.C(3) of the Zoning Ordinance **nor** Section 215-19 of the SALDO, both of which **(Footnote continued on next page…)**

with statutes, the plain language of an ordinance is the best indicator of a municipality's intent. *THW Grp., LLC*, 86 A.3d at 336. We cannot conclude that a repealer provision successfully incorporates new requirements into existing ordinances when its plain language makes no mention of incorporation. Therefore, the Application and Sewer Planning Module could not have been denied on that basis.

## IV. CONCLUSION

Although the email denial from the Township Manager was sufficient to comply with Section 508(2) of the MPC and Section 215-7.F(3) of the Township's SALDO, the denial was based upon Article IX of the Implementation Agreement, which could not serve as the basis for the Township's denial because the requirements set forth in the Implementation Agreement were never incorporated into the Township's existing ordinances, as the Implementation Agreement, by its own terms, required. Accordingly, we reverse common pleas' Order dismissing Landowners' appeal and remand this matter for further remand to the Township to consider the Application and Sewer Planning Module under the Zoning Ordinance and SALDO as it existed at the time Landowners submitted the Application.[13]

_____
**RENÉE COHN JUBELIRER,** Judge

---

permit community sewage plants, includes such references or "Editor's Note[s]." (R.R. at 600a, 803a-04a.)

[13] Given our decision, it is unnecessary to address Landowners' remaining arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres One, LLC and Half Moon   :
Acres, LLC,   :
                          Appellants   :
  :
                v.   :   No. 336 C.D. 2020
  :
Halfmoon Township, Centre County,   :
Pennsylvania   :

# O R D E R

**NOW**, April 21, 2021, the Order of the Court of Common Pleas of Centre County, dated February 25, 2020, is hereby **REVERSED**. This matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** Judge